Ex parte Smith.

Opinion delivered December 22, 1924.

1. HABEAS CORPUS—EFFECT OF DEMURRER TO RESPONSE.—One confined in a hospital as insane and a dangerous person to be at large is entitled to have his mental condition inquired into, for the purpose of determining whether he is entitled to be discharged; but, where a response to a petition for habeas corpus shows that "he is a paranoiac with homicidal tendencies," a demurrer to the response concedes such fact to be true.

2. INSANE PERSONS—DUTY OF HOSPITAL AUTHORITIES.—Hospital authorities having rightful custody of an insane person are charged with the same duties as any other person having custody of such a person, namely, not to abandon him until he can be taken into custody of such person or institution as by law is charged with the duty to care for the insane.

3. INSANE PERSONS—RIGHT TO DISCHARGE.—Where hospital authorities rightfully receive an insane person into their custody, the

court will not require the absolute discharge of such person from such custody, so long as no steps are taken under the statute (Crawford and Moses' Dig., § 5854) for his care and custody.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Walter M. Purvis,* for petitioner.

*J. I. Trawick,* for respondent.

McCulloch, C. J. The petitioner, William L. Smith, has brought here on certiorari the record of proceedings before the Pulaski Chancery Court involving his right to be discharged from the United States Veterans' Hospital No. 78, located near the city of Little Rock.

The petitioner applied to the chancery court for a writ of habeas corpus directed to the superintendent of the hospital, directing the latter to produce petitioner before the court and show cause why he should not be discharged. In the petition for habeas corpus it was alleged that petitioner was "imprisoned and illegally restrained of his liberty by the medical officers of U. S. Veterans' Bureau Hospital No. 78, located in Pulaski County, Arkansas, by reason of, so he is informed and verily believes, the impression and belief of said medical officers that he is insane and a dangerous person to be at large." The petition reads further as follows:

"Your petitioner further states that he is not so imprisoned and restrained by reason of the judgment or order of any court whatsoever, and that the only pretext for his said imprisonment and restraint is the erroneous belief of said officials that said imprisonment and restraint is beneficial to petitioner's health; the only offer for petitioner's release was conditioned upon his attorney signing the paper hereto attached as 'Exhibit A' which is made a part hereof, and whereas, on the contrary, petitioner states that said imprisonment and restraint and close confinement is damaging to his peace of mind and to his physical health, that no good and sufficient reason therefor now exists."

The prayer of the petition was that petitioner be "discharged from said unlawful imprisonment and restraint."

After service of the writ, the superintendent of the hospital appeared and filed a response to the petition, in which he stated, in substance, that petitioner was a patient in said hospital, and was being detained therein in accordance with the rules and regulations governing the institution; that respondent admitted that he had no legal right to detain petitioner, but that the latter was a dangerously insane man, and should not be turned loose upon the community by being discharged from the hospital without being taken charge of by some one capable of taking care of him. A paragraph in the answer reads as follows: "It is not the disposition or intention of the hospital authorities to detain any persons in said institution where there is some one who will take the responsibility of patient to be discharged, and further respondent states that if said William L. Smith were permitted to be discharged and run at large he would be a menace to the public." The response makes reference to exhibits showing the personal and military history of petitioner, which exhibits are made part of the response, and those exhibits show that petitioner was brought to the hospital for treatment, and, according to his personal history and physical examination, he is a paranoiac with homicidal tendencies; that he killed two of his comrades while in the army, and was acquitted on the ground of insanity, and that, immediately before his being placed in the hospital, he fired a gun at a man on the street for the reason that, as he said, the latter "spit at him."

Petitioner demurred to the response, and, upon the demurrer being overruled, petitioner stood upon the demurrer and suffered his petition to be dismissed, and, as before stated, has brought the record here for review on certiorari.

Petitioner was entitled to have his mental condition inquired into for the purpose of determining whether or not he was entitled to be discharged from the hospital, but

his attorney was content with standing upon the demurrer to the response, which set forth all the facts and circumstances under which petitioner is being detained in the hospital. The demurrer conceded those facts to be true, and we must treat the case here as if the chancellor had found, upon proper evidence, the state of facts set forth in the response. According to those facts, the petitioner is insane, and is a dangerous paranoiac, on account of having homicidal tendencies, which have been demonstrated by overt acts in the commission of homicides and by another recent homicidal attempt. Under those circumstances, the petitioner is not entitled to an absolute discharge from the custody of the hospital authorities. According to the allegations of the response, which must be taken as true, the hospital authorities rightfully received petitioner into their custody, and the court should not require them to turn him loose and permit him to go at large, if he is afflicted in the manner and to the extent set forth in the response. In this respect the hospital authorities are in the same attitude and are charged with the same duties as any other person having rightful custody of an insane person. The duty is not to abandon an insane person until he can be taken into custody by such person or institution as is charged by law with the duty to care for the insane. The statutes of this State provide that, when a person is insane so as to endanger his own person or the person or property of others, "it shall be the duty of his guardian, or other person under whose care he may be, and who is bound to provide for his support, to confine him in some suitable place until the next term of the probate court for his county, which shall make such order for the restraint, support and safekeeping of such person as the circumstances of the case shall require." Crawford & Moses' Digest, § 5854. Adequate provision is made by law for the custody and care of insane persons, and, of course, these statutes have full application to an insane person in the United States Veterans' Hospital, but, until some steps are taken for the legal care and custody

of such insane person, the court will not require the abso-
lute discharge of the patient from custody. The facts
of the case, as detailed in the response of the superin-
tendent of the hospital, do not show that petitioner is
entitled to an absolute discharge, and the chancery court
was correct in refusing to grant relief.

Affirmed.

Hart, J., dissents.