BARBEE v. KOLB, SUPERINTENDENT.

4-7353 179 S. W. 2d 701

Opinion delivered May 1, 1944.

---

[1] Restrictions did not apply to sycamore.

*Talley, Owen & Talley,* for appellant.

*Chas. B. Thweatt,* for appellee.

KNOX, J. Appellant, through *habeas corpus* proceedings, sought to obtain his discharge from the State Hospital for Nervous Diseases, where he was confined as a patient by order of the Probate Court of Pulaski county. His prayer for relief was predicated upon the following allegations set out in the petition: (1) that he was then and at all times had been sane; (2) that the proceedings of the Probate Court committing him to the State Hospital were void for the reasons that (a) such proceedings were conducted in the absence of appellant and without his knowledge because he was not given notice of the institution and pendency of such proceedings or the nature of the charge, or the time when and the place where the hearing thereof would be had; (b) the court failed to empanel a jury to inquire into and determine the question of appellant's sanity; and (c) no competent evidence was introduced tending to establish appellant's insanity.

At the time the original proceedings were instituted, appellant was living in Little Rock, Arkansas, at a home which had been occupied by him and his wife for a number of years prior to her death, and where he had resided with his son and daughter-in-law until the son's death. After the death of his son, appellant continued to occupy this home with his daughter-in-law.

Curtis Woods, brother of appellant's daughter-in-law, filed the "citizen's affidavit of insanity" authorized by § 12545 of Pope's Digest. The proceedings in the probate court also show that interrogatories and answers of doctors R. E. Rowland and Glen M. Holmes which purport to have been taken in accordance with the provisions of § 12546 of Pope's Digest, were filed. The "citizen's affidavit" is marked filed March 16, 1943, and the interrogatories and answers of the physicians appear to have been filed on March 17, 1943. Mr. Woods was called as a witness in the *habeas corpus* proceedings, and he testified that the "citizen's affidavit" and the interrogatories and answers of the physicians were filed at the same time; that on the day prior to the filing of these instruments, he (Woods) had procured from the clerk of the court the necessary blanks and had caused Doctor Rowland to examine appellant and fill in the answers to the interrogatories. Mr. Woods testified that some time in February, 1943, Doctor Holmes had administered anti-rabies treatment to appellant following a dog bite wound which he had received, and that Doctor Holmes filled in the answers to the interrogatories in March without seeing appellant or propounding any questions to him.

According to the testimony of Mr. Woods, which is not disputed, he took the "citizen's affidavit" and the interrogatories and answers of the two physicians to the clerk's office, had them marked filed, and then presented them to the Judge of the probate court, who thereupon issued the warrant for commitment directing the Sheriff to take appellant into custody and deliver him to the Superintendent of the State Hospital for Nervous Diseases.

Appellant was not present at the time these papers were submitted to the Probate Judge, and he was not

notified in any way of the proceedings relating thereto. The warrant of commitment was delivered to the Sheriff, but Mrs. Barbee and her brother requested the Sheriff to hold it until they decided to put appellant in the hospital. Their explanation of such delay was that they wanted to see if they could care for him without the necessity of such action. On May 26, 1943, Mr. Woods and Mrs. Barbee requested the Sheriff to execute the commitment, and the Sheriff thereupon took appellant into custody and delivered him to the State Hospital for Nervous Diseases.

On June 3, 1943, appellant was examined by the staff of the State Hospital, and the diagnosis arrived at from such examination was "senile psychosis, confused type, plus paranoid trend."

At the hearing in the *habeas corpus* proceeding, Doctor Pat Murphy, a well known psychiatrist who had been employed by appellant's attorney to make an examination, was called and testified as to appellant's condition. Doctor Murphy's diagnosis was "senile psychosis." The witness testified that appellant probably would not recover sufficiently to take care of himself physically or in the business world; that he would require supervision; that he was not able to take care of himself, was apt to wander away and get lost; that appellant could get along as well in a private institution if someone would look after him; that he needed someone who knew how to handle this kind of a case, and that he did not know how many it would take.

Doctor Hollis, a member of the staff of the State Hospital, was also called as a witness for appellant, and he testified as to the findings of the staff. He also testified that in his opinion, appellant was insane, and that in all probability he would become worse rather than better; that he would require constant care and supervision, and would need to be prevented from wandering off and exposing himself to weather and hazards of traffic. Doctor Hollis testified that the entire staff of the hospital agreed that appellant was an insane person and a proper subject to be placed in a hospital for the insane.

Appellant appeared at the trial in the *habeas corpus* proceeding and testified in his own behalf. The trial court thus had an opportunity to observe appellant and note his condition. At the close of the testimony the trial court denied appellant's petition.

After the issuance of the warrant of commitment, but before appellant was actually confined in the hospital, Act No. 241 of the Acts of 1943 had become effective. This act is rather comprehensive and greatly modifies prior law relating to who, and methods by which persons, may become patients in and be discharged from the State Hospital for Nervous Diseases. Since the proceedings in which appellant was adjudicated insane were had before the effective date of Act 241, we must look to the then existing law to determine whether he was properly committed. A proper consideration of that question would require not only the construction of many provisions of the prior statute, but also extended research into constitutional requirements of due process, and, also, consideration of what effect if any on the question was occasioned by the adoption of the constitutional amendment vesting probate jurisdiction in the judges of the chancery courts, and legislation providing for direct appeals to this court. Determination of those questions as applicable to the prior statute would serve little use as precedent for future guidance, because the decision thereon might be quite different under the provisions of Act 241 of the Acts of 1943. The lack of benefit as a precedent would, of course, be immaterial if a determination of such questions were necessary or proper to a decision of this case. On the other hand, if a determination of such questions would not change the final result of this litigation, then a consideration of such questions would be academic, and such questions should be reserved for consideration at a time when and in a cause where determination thereof becomes necessary to a decision.

In view of the fact that the undisputed evidence in this record, established by the testimony of witnesses called on behalf of appellant, is to the effect that appellant is of unsound mind and a proper subject to be placed in a hospital for nervous diseases, we have reached the

conclusion that for the present, at least, it is unnecessary for us to determine whether the original proceedings, authorizing and directing appellant's admission to the hospital, were regular and in conformity with the then existing law. For the purpose of this opinion we may, and do, assume, without deciding, that such proceedings were not in conformity to then existing law. It is not contended that the warrant for commitment was void on its face. On the contrary such warrant was introduced in evidence by appellant's attorney, and the copy thereof set out in the record before us discloses that the same was, on its face, in all things regular.

Since appellant, indubitably an insane person, was delivered to appellee Kolb under a warrant of commitment regular on its face, such appellee acquired rightful custody of appellant, and became charged with certain duties and responsibilities with respect to him, regardless of whether the inquisition for determination of his sanity was entirely regular.

In the case of *Ex parte* Smith, 167 Ark. 80, 266 S. W. 950, this court sustained the action of Pulaski Chancery Court in refusing to direct the discharge of a patient from the U. S. Veterans Hospital, who had been placed therein by his guardian without the formal order of any court, the insanity of such patient having been admitted by demurrer to the response. Chief Justice McCULLOCH, speaking for the court, said: ''Under those circumstances, the petitioner is not entitled to an absolute discharge from the custody of the hospital authorities. According to the allegations of the response, which must be taken as true, the hospital authorities rightfully received petitioner into their custody, and the court should not require them to turn him loose and permit him to go at large, if he is afflicted in the manner and to the extent set forth in the response. In this respect the hospital authorities are in the same attitude and are charged with the same duties as any other person having rightful custody of an insane person. The duty is not to abandon an insane person until he can be taken into custody by such person or institution as is charged by law with the duty to care for the

insane. The statutes of this state provide that, when a person is insane so as to endanger his own person or the person or property of others, 'it shall be the duty of his guardian, or other person under whose care he may be, and who is bound to provide for his support, to confine him in some suitable place until the next term of the probate court for his county, which shall make such order for the restraint, support and safekeeping of such person as the circumstances of the case shall require.' Crawford & Moses' Digest, § 5854. Adequate provision is made by law for the custody and care of insane persons, and, of course, these statutes have full application to an insane person in the United States Veteran's Hospital, but, until some steps are taken for the legal care and custody of such insane person, the court will not require the absolute discharge of the patient from custody. The facts of the case, as detailed in the response of the superintendent of the hospital, do not show that petitioner is entitled to an absolute discharge, and the chancery court was correct in refusing to grant relief.''

At 28 Am. Jur. 679, it is said: ''. . . if the evidence indicates that one committed to an institution for the insane is actually insane, the court should not order his discharge, regardless of the invalidity of the proceedings under which he was committed, but should direct his continued restraint until such time as proper proceedings can be had for a formal adjudication of insanity.''

Under certain conditions specified in Act 241 of 1943, the superintendent may admit persons to the hospital as patients without the order of a court. Under the provision of § 7 of that act he may discharge any person from the hospital who in his opinion is then mentally competent whether such person was admitted with or without an order of court. Of course, the superintendent would have no authority to indefinitely hold in involuntary custody any person who had not been committed by proper order of a court of competent jurisdiction. Recognizing that patients admitted without a formal commitment, or through irregular process, might later demand their discharge at a time when their condition was such as to

require their continued confinement, the lawmakers, by § 6 of the act, specifically authorized the superintendent to apply to and obtain from the probate court of the county of any such patient's residence a writ of commitment.

If appellant's present mental condition is such that his discharge would not be dangerous for either himself or society, and if his mental condition is such that his own best interest does not require that he remain in the hospital for further treatment and supervision, then he should be discharged, but if his condition is to the contrary he should continue as a patient in such institution.

· If appellee Kolb is of the opinion that appellant should be discharged he is clothed with ample authority to effect his release; on the other hand, if he entertains a contrary conviction in the matter he may and should apply to the Probate Court of Pulaski county for the issuance of a writ of commitment in accordance with the provisions of § 6 of Act 241 of 1943.

The decree will be modified so as to provide that appellant's petition will be dismissed without prejudice to his right to again assert all matters alleged therein if appellee Kolb shall fail to apply within thirty days from this date to the Probate Court of Pulaski county for a writ of commitment in accordance with the provisions of § 6 of Act 241 of 1943, and as so modified the decree will be affirmed.