635 F.2d 1364
 Floyd F. COLEY, Ralph Steed, individually and on behalf of
all other persons similarly situated, Appellants,
v.
Bill CLINTON, Governor of the State of Arkansas; Gail S.
Huecker, Commissioner of the Department of Social and
Rehabilitative Services (Department of Human Services); Pat
Hamilton, Administrator of the Arkansas State Hospital; Dr.
James S. Beckman; Dr. Larry Killough; Virginia Robinson;
Darrell Williams; Blanche Choate, Members of the State
Hospital Board, Appellees.
 No. 79-2043.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 16, 1980.
Decided Dec. 16, 1980.
 
 Griffin J. Stockley, Thomas J. Ginger, argued, James R. Cromwell, Central Arkansas Legal Services, Little Rock, Ark., for plaintiff-appellant Floyd F. Coley.
 Steve Clark, Atty. Gen., David L. Williams, Jackson Jones, Asst. Attys. Gen., Little Rock, Ark., for defendants-appellees.
 Before STEPHENSON, Circuit Judge, KUNZIG,* Court of Claims Judge, and McMILLIAN, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Appellants, two former inmates of an Arkansas state hospital, appeal from the district court's judgment dismissing their complaint and refusing to certify this lawsuit as a class action. Appellants sought to represent a class consisting of all those criminal defendants committed to the Arkansas state mental hospital when found incompetent to stand trial or when acquitted by reason of mental disease or defect. On behalf of themselves and the class, appellants challenged, as violative of the due process and equal protection guarantees of the fourteenth amendment, the procedures for commitment to and release from the state hospital and the automatic confinement, in Rogers Hall, a maximum security building, of criminal defendants committed to the state hospital.
 
 
 2
 The district court[1] abstained from ruling on the procedures for commitment and release, found that confinement of appellants under the conditions existing in Rogers Hall did not violate due process or equal protection, refused to certify this lawsuit as a class action, and granted limited relief.
 
 
 3
 On appeal appellants urge that the district court should not have abstained from ruling on commitment and release procedures, but should have certified the plaintiff class, reached the merits, and found confinement under the conditions in Rogers Hall was unconstitutional. Thus, appellants ask this court not only to reverse the district court and remand for further proceedings, but also to certify it as a class action and to decide the merits of the case.
 
 
 4
 For the reasons discussed below, we affirm the district court's decision to abstain from ruling on the commitment and release procedures, modify in one respect the limited relief granted by the district court, vacate the district court's ruling on the constitutionality of confinement under the conditions in Rogers Hall, vacate the district court's decision not to certify the case as a class action, and remand for further proceedings not inconsistent with this opinion.
 
 
 5
 Appellant Floyd F. Coley was charged with a felony under the laws of Arkansas, acquitted in an Arkansas court by reason of insanity, and committed to the state hospital on August 4, 1977. Appellant Ralph Steed was charged with a misdemeanor under the laws of Arkansas, found incompetent to stand trial and committed to the state hospital on August 9, 1977. Appellants in 1978 brought this class action against a number of state officials for a declaratory judgment that certain Arkansas statutes were unconstitutional and for injunctive relief. Appellants specifically sought to change the state's procedures for commitment and release of criminal defendants and to halt the practice of automatically confining all such inmates under the restrictive conditions in Rogers Hall. Appellants sought a preliminary injunction and in July, 1978, the district court held a hearing on the matter. In December, 1979, the district court issued its decision in this complex case, as discussed above. Appellants timely filed this appeal, and we have jurisdiction over the denial of preliminary injunctive relief under 28 U.S.C. § 1292(a).[2]
 
 I. Commitment and Release Procedures
 
 6
 The first prong of appellant's lawsuit challenges the Arkansas procedures for commitment and release of criminal defendants found incompetent to stand trial or acquitted by reason of mental disease or defect. Appellants argue that these procedures violate their equal protection rights because of differences in treatment between criminal defendants and others committed involuntarily to the state mental hospital under the Arkansas Mental Health Acts. The parties to this appeal appear to assume that Arkansas commitment procedures for criminal defendants differ from the procedures governing involuntary commitment of persons other than criminal defendants. Compare Ark.Stat.Ann. §§ 41-601 to 617 (1977 & Cum.Supp.1979) (commitment and release procedures applying specifically to criminal defendants), with id. §§ 59-1401 to 1424 (Cum.Supp.1979) (commitment and release procedures applying to persons involuntarily committed to mental institutions).
 
 
 7
 A difference in treatment between criminal defendants and other persons in the Arkansas involuntary commitment procedures is critical to appellants' claims that criminal defendants, under a separate commitment and release procedure, receive less favorable treatment than other persons in violation of federal constitutional guarantees of due process and equal protection. We cannot agree that the relevant Arkansas statutes are at all clear in regard to such differences in treatment, and we affirm the district court's decision to abstain because further interpretation of those statutes by the state courts is required before any decision of the federal constitutional claims.
 
 A. The Arkansas Statutes
 
 8
 The 1975 Arkansas Criminal Code revision was apparently drafted to put the commitment and release decision for criminal defendants in the hands of the state circuit court with jurisdiction of the criminal proceeding. Prior to 1975, for example, the Criminal Code apparently provided for commitment by the circuit court of defendants acquitted by reason of insanity. See Ark.Stat.Ann. § 41-613, (commentary) (1977). The Mental Health Act of 1971 had until 1975 provided for the director of the state hospital to accept criminal defendants found not guilty by reason of insanity upon certification by the circuit court, Mental Health Act of 1971, No. 433, ch. 3, §§ 11, 12, 1971 Ark. Acts 987 (repealed 1979) (formerly codified at Ark.Stat.Ann. §§ 59-411, 412 (1971)), and for the director of the state hospital to release such persons when "restored to reason" like any other state hospital inmate, Mental Health Act of 1971, No. 433, ch. 3, §§ 9, 13, 1971 Ark. Acts 987 (repealed 1979) (formerly codified at Ark.Stat.Ann. §§ 59-409, 413 (1971)). However, the 1975 Criminal Code revision appears to have made it mandatory for the circuit court in which the defendant's criminal trial occurred to make the release decision.[3] Ark.Stat.Ann. § 41-613 (1977). The drafters of the 1975 revision explained,
 
 
 9
 This section, dealing with release from the hospital of persons committed under § 41-612 (relating to commitment of defendants acquitted on grounds of mental disease or defect), makes a sharp departure from prior authority. Under pre-existing Arkansas law, the decision as to whether to release patients falling into this legal category was left to the director of the state hospital .... (This section) places the release decision in the hands of the circuit court from which the defendant was committed. The (drafting) Commission rejected the argument that the release procedures ... (for such defendants) should be exactly the same as the release procedures for persons hospitalized under the civil commitment statutes.
 
 
 10
 Id. commentary. Thus, the 1975 Criminal Code revision appeared to abrogate the applicability of the release procedures in § 13 of the Mental Health Act of 1971, No. 433, ch. 3, 1971 Ark. Acts 987 (repealed 1979) (formerly codified at Ark.Stat.Ann. § 59-413 (1971)). But the 1975 Criminal Code revision did not repeal § 13, which was repealed instead by the 1979 Mental Health Law revision. Mental Health Act of 1979, No. 817, ch. 2, § 2, 1979 Ark. Acts 1774, 1794.
 
 
 11
 In 1979 the Arkansas legislature enacted a comprehensive revision of the statutes governing commitment to and release from mental institutions, expressly finding "that the laws relating to ... involuntary commitments of mentally ill patients and patients' rights are in urgent need of clarification and codification." Mental Health Act of 1979, No. 817, ch. 1, § 1, 1979 Ark. Acts 1774. By its terms therefore the Mental Health Act of 1979 clarifies and codifies the law relating to involuntary commitments generally, and on its face the 1979 Act appears to cover commitments through the criminal justice system as well as through the probate courts. Furthermore, § 2 of the Mental Health Act of 1979, No. 817, ch. 2, 1979 Ark. Acts 1774, 1794, repealed §§ 9, 11-13 of the Mental Health Law of 1971, No. 433, ch. 3 (formerly codified at Ark.Stat.Ann. §§ 59-409, 411-413 (1971)), which had previously governed the admission into the state mental hospital of persons committed pursuant to criminal proceedings. Thus, the legislature expressed some intention that the 1979 Act would affect the commitment and release proceedings involving criminal defendants.
 
 
 12
 Indeed, on its face the 1979 Mental Health Act appears to overlap the coverage of the Criminal Code for defendants acquitted by reason of insanity. The 1979 Mental Health Act provides in part:
 
 
 13
 If a person is transported to a hospital ... then the hospital ... may detain such person for initial evaluation and treatment provided:
 
 
 14
 ... An original petition (for civil commitment) is filed (in probate court):In any event, a hearing pursuant to Section 9 of this Act (§ 59-1409) must be held within the period specified in Section 2 (§ 59-1402).
 
 
 15
 Ark.Stat.Ann. § 59-1406 (Cum.Supp.1979). By statutory definition, "(d) etention refers to any confinement of a person against his or her wishes and begins ... (inter alia ) when a person is involuntarily brought to a hospital ...." Id. § 59-1401 G (emphasis added). Thus, by its terms, § 59-1406 of the 1979 Mental Health Act would appear to apply as soon as a criminal defendant is brought to the state hospital, because § 59-1406 by its terms covers all those brought to the hospital and sets forth the provisions for detaining those persons. If a criminal defendant is "a person ... transported to a hospital," the terms of § 59-1406 would require: an original commitment petition to be filed in probate court; a hearing on the need for commitment in probate court pursuant to § 59-1409; and, if the hearing in probate court does not occur within seven days, release of the person pursuant to §§ 59-1402 and 59-1409. In other words, by its terms the 1979 Mental Health Act appears to apply to persons committed through the criminal courts as well as other persons committed through the probate courts.
 
 
 16
 On the other hand, the legislature in the 1979 Act did not repeal the sections of the Criminal Code governing procedure for commitment of criminal defendants by circuit courts to the state hospital, Ark.Stat.Ann. §§ 41-601 to 616 (1977). Therefore, the power of circuit courts to commit criminal defendants upon appropriate findings appears to survive the 1979 Mental Health Act, which repealed sections 11-14 of the Mental Health Act of 1971, No. 433, ch. 3 (formerly codified at Ark.Stat.Ann. §§ 59-411 to 414 (1971)), empowering the state hospital director to admit and release criminal defendants who have been committed. Mental Health Act of 1979, No. 817, ch. 2, § 2, 1979 Ark. Acts 1774, 1794.
 
 
 17
 A further complication in this statutory construction problem involves an Arkansas constitutional question. Article 7, § 34 of the Arkansas Constitution gives probate courts "exclusive original jurisdiction in matters relative to ... persons of unsound mind and their estates...." This section was construed by the Arkansas Supreme Court in 1915 to apply to commitment of criminal defendants acquitted as insane. Ex Parte Baker, 121 Ark. 537, 182 S.W. 279 (1915). In Baker, a criminal defendant committed to the state hospital after being acquitted by reason of insanity sought release on grounds that the commitment by a criminal court was void under Article 7, § 34 of the Arkansas Constitution. The Arkansas Supreme Court rejected this argument on the grounds that the circuit court's certificate of commitment after the criminal proceeding was
 
 
 18
 merely a means for the admission to the asylum of a person charged with crime ... (which) follows as merely an incident to the criminal jurisdiction of the circuit court. It does not constitute an adjudication of the present insanity of the person charged, but merely prima facie evidence of that fact upon which the accused may be held until the question of his insanity can be adjudicated in a court exercising exclusive jurisdiction over such matters.... In other words, the certificate of the circuit judge only makes a prima facie case until there is an adjudication by the probate court, which can be invoked at any time.
 
 
 19
 Ex Parte Baker, supra, 121 Ark. at 540, 182 S.W. 279. Our research has revealed no decision of the Arkansas courts modifying or overruling Baker's case, or applying the Arkansas constitutional provisions to subsequent revisions of the Arkansas Criminal Code and Mental Health Law.
 
 
 20
 There would obviously be tension, if not outright incompatibility, between a state constitutional right to have commitment reviewed in probate court, and a Criminal Code provision drafted to place the decision in the hands of the circuit court. Although the drafters' comment to the relevant criminal code section quoted above indicates an intention to depart from pre-existing law on the commitment of criminal defendants, the drafters did not address the relation of the new section to Article 7, § 34 of the Arkansas Constitution. Moreover, the Criminal Code does not explicitly term exclusive its provisions for commitment and release of criminal defendants to the state hospital. Perhaps Arkansas courts would nevertheless find the criminal proceedings in circuit court to be exclusive of any other proceedings, by a theory that the specific provisions of the Criminal Code control 1979 Mental Health Act provisions or on some other grounds. But see Mears v. Arkansas State Hospital, Ark., 581 S.W.2d 339 (1979). Or perhaps the circuit court proceedings do not end the matter and Arkansas may have commitment procedures for criminal defendants that are to some extent alternative or duplicative in the Mental Health Act and Criminal Code.
 
 
 21
 Finally, assuming the Criminal Code provisions for commitment and release of criminal defendants are exclusive, we still cannot determine how the procedures under the Criminal Code differ from those under the 1979 Mental Health Law without addressing substantial unsettled questions of state law. For example, the Criminal Code provides for the circuit court to make its commitment decision on the basis of pretrial psychiatric reports, medical evidence received at the defendant's criminal trial, or "the medical evidence presented at a separate, post-acquittal hearing." Ark.Stat.Ann. § 41-612 (1977). The drafters' comment indicates that the court is not required in all cases to hold the post-acquittal hearing. Id. commentary. A number of alternative interpretations suggest themselves. Perhaps the hearing is left to the discretion of the trial court. Perhaps the defendant is entitled to a hearing only if a timely request is made. Or perhaps a hearing must be held, unless the defendant knowingly and voluntarily waives his entitlement to it.
 
 
 22
 The above discussion only outlines a few of the statutory construction issues that may be involved in interpreting Arkansas 1979 Mental Health Act and Criminal Code as these statutes apply to the procedures for commitment of criminal defendants.[4] We suggest that the present state of the law is far from clear.[5] No Arkansas court to our knowledge has yet addressed the complex problem of interpreting and harmonizing these statutes. All that can be said with certainty is that resolution of the problem would require departure from the realm of federal constitutional concerns and deep intrusion into sensitive areas of state concern, such as allotment of jurisdiction between the various state courts and the relation of criminal trial procedures to administration of the state mental health system.
 
 
 23
 B. Abstention on Challenges to Commitment and Release Procedures
 
 
 24
 It is our view that the district court was correct in abstaining from explicating the Arkansas 1979 Mental Health Act, its relatively new Criminal Code, and the relation between these statutes under the Arkansas constitution. This is a matter of statutory construction which we leave in the first instance to the Arkansas courts.
 
 
 25
 Under our analysis of the Arkansas statutes, appellants' claims focus largely on two sensitive areas of paramount state concern. The first area involved is the judicial procedure for commitment of criminal defendants in Arkansas: the application by Arkansas circuit courts of special standards under the Criminal Code for commitment of criminal defendants found incompetent to stand trial or not guilty by reason of mental disease or defect. The second area of state concern is administrative: the treatment of a criminal defendant by state hospital officials after the defendant has been transferred to the state hospital. As discussed above, the Mental Health Act of 1979 could be interpreted to require state hospital officials to take certain actions quite apart from the criminal proceedings in circuit court. Although we think the rationale may be somewhat different for abstaining from interference with the state judicial proceedings or the state administrative matters, we nevertheless conclude that abstention from interference in either type of proceeding was justified.
 
 
 26
 As to state judicial action involved in the commitment and release of criminal defendants, abstention is compelled by the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (Younger ), which restricts federal court interference with pending state court criminal proceedings. These state court proceedings for commitment are "in aid of and closely related to criminal statutes," Moore v. Sims, 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979), citing Huffman v. Pursue, Ltd., 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). Therefore the doctrines of comity and federalism set forth in Younger preclude federal court intervention by way of injunctive or declaratory relief in the absence of a showing of bad faith on the part of the state in maintaining the proceedings, exceptional circumstances, or other limited grounds recognized by the Supreme Court as an exception to the Younger rule. See Kugler v. Helfant, 421 U.S. 117, 124, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). No such grounds are alleged here. Appellants appear to argue that Younger abstention would be inappropriate because state court proceedings no longer are pending and in fact have come to their conclusion when appellants were committed to the state mental hospital. This argument is foreclosed by the Supreme Court's decision in Huffman v. Pursue, Ltd., supra, 420 U.S. at 607-11, 95 S.Ct. at 1209-1211.
 
 
 27
 Art. VI of the United States Constitution declares that "the Judges in every state shall be bound" by the Federal Constitution, laws, and treaties. Appell(ants are) in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities. This we refuse to do. The District Court (properly declined to entertain) this action, seeking preappeal interference with a state judicial proceeding (in aid of state criminal jurisdiction), unless appell(ants) established that early intervention was justified under one of the exceptions recognized in Younger. (*)
 
 
 28
 Id. at 611, 95 S.Ct. at 1211. Like the litigant in Huffman, appellants cannot avoid Younger simply by failing to appeal the state court commitment orders.
 
 
 29
 Appellants therefore may not invoke federal declaratory or injunctive action at this time[6] to interfere with the Arkansas circuit court commitment proceedings. Appellants cannot prevail by arguing that access to the courts is effectively denied by abstention from federal jurisdiction over aclass lawsuit challenging commitment procedures as violative of fundamental constitutional rights. Whatever infirmities may taint the Arkansas commitment procedures, lack of access to the courts certainly is not one of them, because the commitment procedure challenged by appellants takes place in state court, thus guaranteeing court action in every case. If it is denial of access to federal courts which appellants complain of, the short answer to that objection is that the purpose of the Younger doctrine as elaborated by the Supreme Court[7] is precisely to limit access to federal courts for injunctive or declaratory relief against state court proceedings of this kind.[8]
 
 
 30
 The Younger restriction on federal court interference with ongoing state court proceedings closely related to the criminal law, however, does not apply to actions against state officials which are not part of such ongoing state court criminal proceedings. See Gerstein v. Pugh, 420 U.S. 103, 108 n.9, 95 S.Ct. 854, 860, 43 L.Ed.2d 54 (1975). Insofar as appellants' challenge to commitment procedures involves provisions of the Mental Health Law which require state hospital officials to initiate probate court commitment proceedings or take other action independent of the circuit court criminal proceeding,[9] Younger abstention would not be appropriate. A challenge to state administrative inaction would not interfere with ongoing state proceedings but rather would seek commencement of a state proceeding thwarted by administrative inaction.
 
 
 31
 Where no pending state proceeding would be undermined, the rule governing federal court abstention is the converse of the Younger rule restricting federal intervention in judicial proceedings. As a rule, federal courts are required to exercise their jurisdiction when invoked to redress alleged constitutional deprivations by state administrative actions; it is only in exceptional circumstances that a federal court may abstain from decision for state resolution of preliminary issues. Babbitt v. United Farm Workers, 442 U.S. 289, 306, 99 S.Ct. 2301, 2312, 60 L.Ed.2d 895 (1979); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); George v. Parratt, 602 F.2d 818, 819-20 (8th Cir. 1979). Among these exceptional circumstances is the doctrine of Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), which applies where the case involves an unsettled question of state law which involves important state interests and which may be resolved in such a way as to avoid need for decision of the federal constitutional question. Lake Carriers' Ass'n v. MacMullen, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). See generally Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071 (1974); Developments in the Law-s 1983 & Federalism, 90 Harv.L.Rev. 1133 (1977). We believe this case to be appropriate for Pullman abstention as to the constitutional challenges to the administrative procedures for commitment and release.
 
 
 32
 We have recently reviewed the factors involved in deciding whether to abstain from a case under the Pullman doctrine. In George v. Parratt, supra, 602 F.2d at 820-22 (footnotes omitted), we recognized five such factors:
 
 
 33
 (1) what effect will abstention have on the rights to be protected ... (,2) whether there are available state remedies ... (,3) whether the challenged state law is unclear ... (,4) whether the state law is fairly susceptible of an interpretation that would avoid any federal constitutional question ... (and 5) whether abstention will avoid unnecessary federal interference in state operations.
 
 
 34
 As the above discussion indicates, the applicable state law is unclear and susceptible to interpretations that would entirely obviate appellants' federal constitutional claims concerning commitment and release procedures by providing procedures to criminal defendants similar to the procedures required for other persons. Indeed, the Arkansas commitment statutes could provide more procedural protection for criminal defendants than other persons, if the statutes were interpreted to allow a criminal defendant to invoke the procedural protections both of circuit court criminal proceedings under the Criminal Code and also of probate court proceedings under the 1979 Mental Health Act. See note 3 supra. The interpretation of these statutes is a matter involving sensitive and important state interests in its mental health program.
 
 
 35
 We recognize that deference to state court determination of these issues delays vindication of any federal constitutional rights of appellants that may be in need of protection. But appellants inform us that they do not seek immediate relief for individuals; instead, they seek reformation of the state commitment and release procedures generally and are content to wait until after this judicial determination of general procedures to make their individual application to the state hospital authorities for relief. Although appellants urge that the record in the district court is adequate to resolve the constitutional issues involved in their challenge to commitment and release procedures, we cannot agree. Exploration of the statutory scheme governing the matter has hardly begun. The district court abstained, and left this exploration to be made by the state courts. 479 F.Supp. at 1038-39. One way or the other, further deliberation is required in this case, and because of the above-mentioned considerations, we agree the deliberation must occur in the state courts.[10]
 
 II. Conditions of Confinement
 
 36
 The second prong of this lawsuit involves a federal constitutional challenge to the assignment of criminal defendants once committed to a part of the state hospital known as Rogers Hall. It is undisputed that criminal defendants are automatically assigned to Rogers Hall upon their arrival at the state hospital and virtually never are transferred to other wards; persons other than criminal defendants upon commitment are assigned to "open wards" and seldom transferred to Rogers Hall.[11] Inmates of Rogers Hall suffer greater restrictions on their liberty than inmates of the open wards.
 
 
 37
 Rogers Hall contains two wards. Male[12] inmates of Rogers Hall are first assigned to "Ward B," which consists of a large day room, a wood shop, dormitory rooms, a seclusion area, a large shower room, and the nurse's station. Appellants claim that Ward B inmates may not have personal possessions other than reading material in their rooms, must wear hospital uniforms and not their own clothes, may receive visits only from family members during a two-hour period each day, and have access to a gymnasium only one hour per day, five days a week. Ward B inmates have no ground privileges and must remain in the ward. An inmate must earn the approval of hospital staff to move to the other, less restrictive male ward of Rogers Hall, Ward A, and inmates spend an average of two months on Ward B, according to appellants.
 
 
 38
 After earning approval of hospital staff to move to Ward A, appellants explain, an inmate may wear his own clothes and keep limited personal possessions including only a timepiece or radio. Ward A is similar physically to Ward B, but also contains a recreation room the inmates can use. Visitation restrictions are similar to Ward B. Upon approval of the hospital staff, a Ward A inmate may obtain permission to go out on the hospital grounds, a privilege allowed less than a third of the inmates and limited to a time period of no more than three hours a day in actual practice, appellants claim.
 
 
 39
 Appellants urge that the restrictions on Rogers Hall inmates are much greater than restrictions on other "open ward" inmates of the state hospital who, for example, are permitted to wear their own clothes and have ground privileges after an initial observation period that averages about a week. Open ward patients have fewer restrictions on their personal possessions and greater access to visitors. They may be given permission to go off grounds on occasion.
 
 
 40
 Appellants contend that the differences in treatment violate the equal protection and due process clauses of the fourteenth amendment. They point out that a finding of dangerousness is requisite before any person can be involuntarily committed to the state institution and that many of the involuntarily committed inmates allegedly committed acts that are crimes under Arkansas law. Therefore, appellants argue it is arbitrary or irrational to make group distinctions for purposes of institutional security between criminal defendants committed to the state hospital and dangerous persons involuntarily committed through the probate courts. Appellants do not argue that all criminal defendants committed to the state hospital should be housed in the open wards, but that under due process and equal protection there must be an initial finding that the individual poses some serious risk before the state may curtail fundamental rights by assigning that individual to Rogers Hall. Thus, if appellants prevailed, the severe restrictions of Rogers Hall confinement could not be imposed merely on the basis of an inmate's status as a criminal defendant, where the state imposes no comparable restrictions on other persons involuntarily committed as dangerous.
 
 
 41
 The district court rejected appellant's claim, holding that "a need for security to prevent escapes and possibly other crimes" justifies confining criminal defendants in Rogers Hall, but not other inmates found dangerous to themselves or others. 479 F.Supp. at 1040. Although we question whether this analysis fully disposes of the due process and equal protection issues,[13] we do not need to address the merits of the constitutional challenge to the conditions of confinement at Rogers Hall because we think that the district court should have abstained from deciding the issue. As in the case of commitment and release procedures discussed above, there is an Arkansas statute the construction of which could well avoid any constitutional question. As part of the 1979 Mental Health Act, Arkansas enacted a "patients' rights" section, Ark.Stat.Ann. § 59-1416 (Cum.Supp.1979). The section by its terms applies to any "person ... committed involuntarily to a hospital ...." Id. The section provides:
 
 
 42
 Patients' rights.-All rights granted under the U. S. Constitution and Constitution of the State of Arkansas to a person admitted voluntarily or committed involuntarily to a hospital are guaranteed under this Act (§§ 59-1401-59-1424). Patients' rights shall specifically include but are not limited to the following:
 
 
 43
 1. To wear his own clothes; to keep and use his own personal possessions including his toilet articles, unless during acutely suicidal or agitated states this might prove dangerous to the patient.
 
 
 44
 2. To keep and be allowed to spend a reasonable sum of his own money for canteen expenses and small purchases.
 
 
 45
 3. To have access to individual storage space for his private use.
 
 
 46
 4. To see visitors each day.
 
 
 47
 5. To have reasonable access to a telephone, both to make and receive confidential calls.
 
 
 48
 6. To have ready access to letter writing materials, including stamps, and to mail and receive unopened correspondence.
 
 
 49
 9. To be respected as an individual with dignity and unique value.
 
 
 50
 12. To be seen by the assigned physician and/or treatment team without undue delay and to be seen at intervals thereafter.
 
 
 51
 13. To obtain from the physician or the treatment team, complete current information concerning diagnosis, treatment, and prognosis in terms that can be understood. The patient has the right to know by name the physician responsible for coordination of treatment.
 
 
 52
 19. To be placed in an adjunctive therapy program, if prescribed as a part of the treatment program, depending upon availability of facilities.
 
 
 53
 20. To be visited during established visiting hours by friends and relatives, and to be visited in private by the religious leader of his or her choice.
 
 
 54
 21. To file a complaint if there is evidence of discrimination because of race, color, sex, religion, or national origin.
 
 
 55
 22. To be offered another modality of treatment and to expect continuity of care when released.
 
 
 56
 23. To be free from harm, including unnecessary or excessive physical restraint, isolation, and medication. The giving of medication and/or refusal to administer medication shall not be used as punishment, or for the convenience of staff alone or in quantities that interfere with the treatment program.
 
 
 57
 24. To prompt medical care and treatment.
 
 
 58
 25. To religious freedom and practice.
 
 
 59
 26. To physical exercise and recreational opportunities.
 
 
 60
 As discussed above, interpretation of the 1979 Mental Health Act may involve complex questions of statutory construction, and the relation of the 1979 Mental Health Act to the commitment process for criminal defendants is not at all clear to us. We note, however, that the state seems to concede that the establishment of Rogers Hall and the decision to assign to Rogers Hall all criminal defendants committed to the state hospital are purely administrative matters left up to the director of the state hospital. The circuit court commits criminal defendants to the state hospital, not to Rogers Hall. Therefore, there appears to be quite a strong argument that the recently enacted mental health law covers the conditions in Rogers Hall and the decision which state hospital inmates to confine there. On the other hand, there are indications discussed above that the Arkansas Criminal Code may call for different treatment of criminal defendants and others committed to the state hospital.
 
 
 61
 Because the issues relating to conditions and confinement in Rogers Hall are an administrative matter, we apply the Pullman doctrine to determine whether the district court should have abstained from deciding this part of the case. We acknowledge that constitutional challenges are the least likely candidates for abstention and that the abstention decision is within the discretion of the district court in the first instance. Nevertheless, we hold that the district court erred by not abstaining until the Arkansas state courts have had an opportunity to determine the applicability and effect of the Arkansas "patients' rights" statute to the conditions of confinement in Rogers Hall. The state legislature has enacted a remedial measure aimed directly at the specific conditions claimed by appellants to violate constitutional rights: deprivation of the inmate's own clothing and personal possessions, allegedly inadequate treatment, visitation restrictions, and absence of individual consideration. All are addressed in the guarantee of patients' rights. If applicable to inmates of Rogers Hall, it appears likely that the particulars of this state statutory guarantee of patients' rights may go well beyond the general requirements of due process and equal protection.
 
 
 62
 Appellants urge us to interpose an adjudication of federal constitutional claims between the recent enactment of remedial state legislation and the state's implementation of its remedial measures. To do so would damage an essential element of our federal system, the ability of states to experiment with their own solutions to social problems. Because disposition of the federal constitutional claims presented by appellants depends to a large degree upon how the Arkansas "patients' rights" statute is interpreted, and in the circumstances of this case considerations of federalism strongly favor interpretation of the statute by state authorities, we hold that the district court should have abstained from deciding this part of the case.III. Retention of Jurisdiction
 
 
 63
 The different considerations involved in abstention under the Younger and Pullman doctrines further affect the nature of federal court proceedings after abstention. Abstention under the Younger doctrine requires dismissal of the federal constitutional claim and its presentation in the state proceeding, while abstention under the Pullman doctrine contemplates retention of jurisdiction over the federal claims, pending the disposition of state law issues in the state proceedings. See Gibson v. Berryhill, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). Therefore, the proper procedure after Pullman-type abstention is for the district court to retain jurisdiction. Palmer v. Jackson, 617 F.2d 424, 431 n.11 (5th Cir. 1980); IBEW, Local 1245 v. Public Service Comm'n, 614 F.2d 206 (9th Cir. 1980); Goldberg v. Carey, 601 F.2d 653 (2d Cir. 1979); Kartell v. Blue Shield of Massachusetts, Inc., 592 F.2d 1191 (1st Cir. 1979); D'Iorio v. County of Delaware, 592 F.2d 681 (3d Cir. 1978); Public Citizen v. Commission on Medical Discipline, 573 F.2d 863 (4th Cir. 1978); Muskegon Theaters, Inc. v. City of Muskegon, 507 F.2d 199 (6th Cir. 1974); Warren v. Government National Mortgage Ass'n, 443 F.2d 624 (8th Cir.), cert. denied, 404 U.S. 886, 92 S.Ct. 220, 30 L.Ed.2d 169 (1971). Appellants may either present their federal constitutional claims in state court or, by following the procedures set forth in England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), reserve the right to return to federal court.
 
 
 64
 Therefore, we affirm the district court's dismissal of appellants' claims insofar as the challenge is to commitment and release procedures in the Arkansas circuit courts for criminal defendants. Whatever constitutional infirmities may be involved in the circuit court procedures must be challenged in the circuit courts, and appellants are bound to seek vindication of federal constitutional rights in the Arkansas appellate courts. See Huffman v. Pursue, Ltd., supra, 420 U.S. at 611, 95 S.Ct. at 1211. We note that this dismissal is without prejudice and does not operate as an adjudication on the merits. Caldwell v. Camp, 594 F.2d 705, 708 (8th Cir. 1979).
 
 
 65
 We next address appellants' federal constitutional claims which involve commitment and release procedures apart from the circuit court criminal action, that is, procedures available to state hospital officials on their own or in a forum other than the circuit court criminal proceeding for commitment to and release from the state hospital of criminal defendants. As our discussion above indicates, we are uncertain what, if any, such procedures exist under Arkansas law and we leave the matter to the Arkansas courts in the first instance. If such procedures apart from the state circuit court criminal proceedings exist, Pullman rather than Younger abstention would be called for, as discussed above. The result of Pullman abstention is that the district court should retain jurisdiction over appellants' federal constitutional claims and appellants may, if they so choose, reserve the right to litigate their federal constitutional claims in federal court proceedings.
 
 
 66
 We recognize that the line is not very clear at this time between commitment and release procedures that involve the Arkansas circuit court criminal proceedings and those procedures available to state hospital officials or appellants apart from the circuit court criminal proceedings. We cannot at this time neatly divide up this part of the case between constitutional challenges to criminal court proceedings under the Younger doctrine and administrative proceedings under the Pullman doctrine. Only after the Arkansas courts further explicate Arkansas law will the picture be clear enough to guide further proceedings.
 
 
 67
 Nevertheless, we consider it highly likely that some state administrative activity apart from criminal court proceedings will be involved. As noted above, it appears that Ark.Stat.Ann. § 41-607 (1977) allows commitment of a criminal defendant found incompetent to stand trial for no more than one year; subsequent commitment seems to depend on the initiation of probate court proceedings by state hospital officials. See note 9 supra. A challenge on federal constitutional grounds to the failure by state hospital officials to follow requisite commitment procedures would involve administrative inaction, not pending judicial action. Pullman-type abstention would then be appropriate. Because of the likelihood that significant parts of this case are appropriate for Pullman rather than Younger abstention, the district court should retain jurisdiction over this part of the case until the state courts have resolved state law problems adequately to give further guidance.
 
 
 68
 Finally, we note that the constitutional challenges by appellants to conditions and confinement in Rogers Hall relate to an entirely administrative matter. Abstention from decision on these claims therefore results from application of the Pullman doctrine, and the district court should retain jurisdiction over the claim pending further state court proceeding.
 
 IV. Class Action
 
 69
 The district court declined to certify a plaintiff class in this case, reasoning that this case would involve "so many variations of remedy (for each inmate of Rogers Hall) that any sort of class relief would be impossible." 479 F.Supp. at 1041. But such "(f)actual differences are not fatal (to maintenance of a class action) if common questions of law exist." Like v. Carter, 448 F.2d 798, 802 (8th Cir. 1971), cert. denied, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972); see also Kirby v. Colony Furniture Co., 613 F.2d 696, 699-700 (8th Cir. 1980). Common to each member of the class are the questions of allegedly discriminatory commitment procedures and conditions of confinement at Rogers Hall, and the relief sought on behalf of the class includes a declaration that certain present commitment procedures and conditions of confinement are unconstitutional. Therefore, a class action may be maintained under Fed.R.Civ.P. 23(b)(2), which is an especially appropriate vehicle for civil rights actions seeking such declaratory relief "for prison and hospital reform." 3B J. Moore & J. Kennedy, Moore's Federal Practice P 23.40(1) (1980).
 
 
 70
 The fact that individuals may also seek relief on the basis of facts peculiar to their individual cases does not deflect the thrust of this lawsuit away from the constitutional questions which will ultimately determine if there is any reason to hear individual claims. Indeed, appellants take the sensible position that, if they prevail in their constitutional challenge to commitment procedures for and conditions in Rogers Hall, "(r)elief may be had through the creation by the state hospital of standards.... Initially, therefore, the application of the relief ... to individuals would be made by the hospital itself." Brief of Appellants at 56. Any federal court intervention in an individual case would thus arise only as a secondary matter in implementing class relief and does not provide a basis for refusing to allow a class action here. Halderman v. Pennhurst State School & Hospital, 612 F.2d 84, 109-11 (3d Cir. 1979) (en banc), cert. granted, 447 U.S. 904, 100 S.Ct. 2984, 64 L.Ed.2d 853 (1980).
 
 
 71
 Certainly, the district court has wide discretion in determining whether or not to certify a class under Rule 23. Wright v. Stone Container Corp., 524 F.2d 1058 (8th Cir. 1975). However, "(c)ourts should guard against the temptation to assume that the certification of a (Rule) 23(b)(2) class action is purely discretionary." 3B J. Moore & J. Kennedy, Moore's Federal Practice P 23.40(3) (1980). Because one purpose of Rule 23(b)(2) was to enable plaintiffs to bring lawsuits vindicating civil rights, the rule "must be read liberally in the context of civil rights suits." Ahrens v. Thomas, 570 F.2d 286, 288 (8th Cir. 1978). See generally 7A C. Wright & A. Miller, Federal Practice & Procedure §§ 1775-1776 (1972). This principle of construction limits the district court's discretion. See King v. Kansas City Southern Industries, Inc., 519 F.2d 20, 25-26 (7th Cir. 1975). In this case we conclude that the refusal to certify the class must be reversed because it was not based upon "the proper criteria in making this determination." Livesay v. Punta Gorda Isles, Inc., 550 F.2d 1106, 1110 (8th Cir. 1977), rev'd on other grounds, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). It is apparent that the prerequisites of Rule 23(a) have been met: the class is numerous, there are questions common to the class, the claims of the representative parties are typical, and no problem of adequate representation of the class appears on this record. As discussed above, the case falls squarely within the purpose of Rule 23(b)(2) to allow class actions vindicating civil rights. The case therefore may be maintained in federal court as a class action.[14]
 
 V. Interim Relief
 
 72
 Despite its general abstention from interference with the Arkansas commitment and release proceedings, the district court did order the state hospital director to make written annual reports on appellant Ralph Steed who was committed as incompetent to stand trial. 479 F.Supp. at 1041. The district court found that most of the Rogers Hall inmates had been committed as incompetent to stand trial and that reports were not made within a year despite the apparent requirements of Ark.Stat.Ann. § 41-607 (1977). 479 F.Supp. at 1041. As noted above, the report by the state hospital director appears to have a critical effect in triggering a necessity for state hospital officials to institute probate court commitment procedures to continue detaining the inmate. Therefore, the report may certainly have a considerable effect upon Steed's due process rights, and the district court had discretion to order the reports be made pending abstention to reduce the impact of abstention on appellants' constitutional rights. Babbitt v. United Farm Workers, supra, 442 U.S. at 312 n.18, 99 S.Ct. at 2316 n.18.
 
 
 73
 We are informed, however, that appellant Steed has been conditionally released from Rogers Hall by order of the circuit court. We leave to the district court the issue of whether there is an ongoing need for the report order. In view of our holding on the class certification issue, a question may emerge as to the appropriateness of extending a similar order to those class members committed as incompetent to stand trial. We observe that considerations involved in granting an interim order involving a class as opposed to an individual are not necessarily the same, and that the matter is within the discretion of the trial court. Id.
 
 
 74
 The district court also ordered that a similar annual report be made for appellant Floyd F. Coley, who was committed to the state hospital after being found not guilty by reason of insanity. 479 F.Supp. at 1041. We view this order, too, as an exercise of the district court's discretion to reduce the impact of abstention on the constitutional rights of appellants. The district court did not find any specific Arkansas statutory requirement for such a report, but determined that it would be reasonable to interpret the Arkansas statutes to require a report to the committing court once a year for defendants committed after acquittal because of mental disease or defect. We observe that there are similar questions to those mentioned above, concerning the continuing need for the order as to appellant Coley and the appropriateness of including members of the class who were committed after acquittal because of mental disease or defect. We leave these matters to the district court's discretion.
 
 
 75
 We emphasize that the annual report order is an interim order. It is a temporary provision granting relief pending abstention and in no way binding as an interpretation of the Arkansas statutes involved here, a task we leave to the Arkansas courts in the first instance. Therefore, the district court order requiring annual reports is modified to specify its temporary nature.
 
 
 76
 Accordingly, the judgment is affirmed in part, modified in part, vacated in part and remanded to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable Robert L. Kunzig, Judge, United States Court of Claims, sitting by designation
 
 
 [1]
 The Honorable Elsijane Trimble Roy, United States District Judge for the Eastern District of Arkansas. The district court opinion is reported at 479 F.Supp. 1036 (E.D.Ark.1979)
 
 
 [2]
 Although the parties inform us that both of the named plaintiffs have been conditionally released from Rogers Hall, this appeal involves alleged violations of constitutional rights affecting a putative class of inmates. Appellants challenge the district court's denial of both class certification and substantive relief for the class. Therefore the case is not moot. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)
 
 
 [3]
 § 41-613 appears to require the director of the state hospital to report to the circuit court when the defendant becomes free from mental disease or defect and also to give the defendant the right periodically to request the circuit court to review his or her commitment
 
 
 [4]
 An additional complexity is added by Arkansas case law indicating that the 1975 revisions of the Criminal Code may not apply to commitments prior to the effective date of the 1975 revisions. See Campbell v. State, Ark., 576 S.W.2d 938 (1979)
 
 
 [5]
 Construction of the Arkansas statutes relating to disposition of criminal defendants found incompetent to stand trial seems to involve similar problems. See Ark.Stat.Ann. § 41-607 (1977); id. §§ 59-1401 to 1424 (Cum.Supp.1979); id. §§ 43-1301 to 1307 (1977); Mental Health Act of 1971, No. 433, ch. 3, § 11, 1971 Ark. Acts 987 (repealed 1979) (formerly codified at Ark.Stat.Ann. § 59-411 (1971)). See also note 4 supra and text infra, discussing Ark.Stat.Ann. § 41-607 (1977)
 ... we do not know for certain whether (any state appellate) remedy remained available at the time the District Court('s jurisdiction was invoked by appellants), or whether it remains available now. In any event, appell(ants) may not avoid the standards of Younger by simply failing to comply with the procedures of perfecting (their) appeal within the (state) judicial system.
 
 
 [6]
 We note that this case involves the commitment of appellants which has already taken place and not any threat of repeated unconstitutional commitments. Cf. Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977)
 
 
 [7]
 See Moore v. Simms, supra, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994; Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); Huffman v. Pursue, Ltd., supra, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482
 
 
 [8]
 Appellants do not seek federal habeas corpus relief from their confinement, but instead, as noted below, challenge the constitutionality of the general commitment procedures and suggest they are content to seek any individual relief from state hospital authorities prior to seeking such relief from a federal court. Accordingly, we need not consider whether their complaint should be treated as a habeas petition
 
 
 [9]
 At least one type of case would appear to require administrative action unconnected with the criminal proceeding. After commitment to the state hospital of a defendant who is found not competent to stand trial, the hospital's director apparently has a duty to report in writing on the defendant's condition within a reasonable period of time not to exceed one year after commitment. Ark.Stat.Ann. § 41-607 (1977). The statute apparently predicates subsequent commitment of the defendant upon initiation by state hospital officials of commitment proceedings in the probate court. Id. Therefore, it may well be that, one year after commitment, the disposition of a defendant found incompetent to stand trial is entirely out of the hands of the circuit court and beyond the initial criminal proceeding. A challenge on federal constitutional grounds to the failure of state hospital officials to follow requisite commitment procedures would not interfere with any ongoing state judicial proceeding but would attack the failure of a state administrative official to initiate a required proceeding
 
 
 [10]
 Appellants do not dispute that a declaratory judgment action would be available to inmates under Ark.Stat.Ann. § 34-2501 et seq. (1962), interpreted in Bennett v. NAACP, 236 Ark. 750, 370 S.W.2d 79 (1963). See also Barbee v. Kolb, 207 Ark. 227, 179 S.W.2d 701 (1944), (suggesting availability of state habeas action for challenge by involuntary committee to confinement, at least in some circumstances). Moreover, the challenges to the commitment and release procedures could be presented in the requisite circuit court criminal proceedings and presumably on appeal of these proceedings. The state suggests also that mandamus proceedings might be available in some circumstances to challenge an improper commitment
 Appellants maintain that the availability of these state proceedings does not justify abstention because appellants could not present their claims on a class basis in the Arkansas courts under the Arkansas rules of procedure. Assuming arguendo that no class action would be available under Arkansas law, that assumption would not affect our abstention decision. Younger abstention may not be avoided in a federal class action solely because the federal claim could not be presented on a class basis in state court. Cf. Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971) (Younger principles applied to class based challenge to criminal statutes). See also American Civil Liberties Union v. Bozardt, 539 F.2d 340 (5th Cir.), cert. denied, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976). Pullman abstention requires state court interpretation of state law issues, but not necessarily state court determination on the plaintiff's federal right to relief. See England v. La. State Bd. of Med. Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).
 
 
 [11]
 The record suggests that on occasion an uncontrollable inmate originally assigned to the open wards may be transferred to Rogers Hall. One criminal defendant charged with first degree murder appears to have been transferred from Rogers Hall to an open ward after being stabbed. A hospital employee testified the criminal defendant was allowed to remain in the open ward when her behavior was satisfactory
 
 
 [12]
 Women in Rogers Hall are assigned to a separate ward. In the district court appellants made claims involving differences in treatment between male and female inmates of Rogers Hall, but they do not pursue those claims in this appeal
 
 
 [13]
 See generally S. Brakel & R. Rock, Eds., The Mentally Disabled and the Law 404-05 (rev. ed. 1971); S. Rubin, Law of Criminal Correction 591-606 (2d ed. 1973); D. Wexler, Criminal Commitments & Dangerous Mental Patients: Legal Issues of Confinement, Treatment, & Release (1976); German & Singer, Punishment of the Not Guilty: Hospitalization of Persons Acquitted by Reason of Insanity, 29 Rutgers L.Rev. 1011, 1035-40 (1976). Although protection of the physical safety of the community is certainly a compelling state interest justifying the imprisonment of those found to be criminals, the inmates of Rogers Hall have only been accused and not convicted of anything. They have been found to be dangerous, but presumably so have all the other inmates involuntarily committed to the state hospital. We are troubled by the absence of a more individualized rationale for severe restrictions on individual liberty
 
 
 [14]
 See, e. g., Johnson v. Brelje, 482 F.Supp. 121 (N.D.Ill.1979); Hardwick v. Ault, 447 F.Supp. 116, 132 (M.D.Ga.1978); Goldy v. Beal, 429 F.Supp. 640, 648-49 (M.D.Pa.1976); Pugh v. Locke, 406 F.Supp. 318 (M.D.Ala.1976), aff'd and modified, Newton v. State of Ala., 559 F.2d 283 (5th Cir. 1977), cert. denied, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); Lynch v. Baxley, 386 F.Supp. 378, 386-87 (M.D.Ala.1974) (three-judge court); Gomez v. Miller, 341 F.Supp. 323 (S.D.N.Y.1972) (three-judge court), aff'd, 412 U.S. 914, 93 S.Ct. 2728, 37 L.Ed.2d 141 (1973). See also Hayes v. Secretary of Dep't of Public Safety, 455 F.2d 798 (4th Cir. 1972) (per curiam); Inmates of Attica Correctional Facility v. Rockefeller, 453 F.2d 12, 24-25 (2d Cir. 1971); Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968). See generally 4 H. NEWBERG, CLASS ACTIONS § 7942 (1977)