**Sharon SLAUGHTER, Helen Stewart and Kathryn Jenkins, Plaintiffs,**

v.

**Leonard LEVINE, in his capacity as Commissioner of the Minnesota Department of Public Welfare, Defendant and Third Party Plaintiff,**

v.

**Margaret HECKLER, in her capacity as Secretary, United States Department of Health and Human Services, Third Party Defendant.**

Civ. No. 4–83–579.

United States District Court, D. Minnesota, Fourth Division.

Dec. 11, 1984.

on December 1, 1982. Plaintiff's food stamps and medical assistance benefits were also terminated at this time.[4] She used the lump sum settlement, which was her only source of income, to support herself and her child until July, 1983, at which point the funds had been exhausted. Plaintiff spent the lump sum funds on ordinary living expenses and on medical expenses. When plaintiff reapplied for AFDC benefits in July, 1983, her application was denied on the basis that her lump sum settlement had rendered her ineligible for a full grant until March of 1984. At the time plaintiff reapplied, she faced $3,400 in hospital bills and almost $400 in utility bills. Plaintiff's administrative appeals were denied. She was reinstated to AFDC in February, 1984, but received no funds for the period July, 1983 to February, 1984.

The third named plaintiff is Kathryn Jenkins.[5] In November of 1982 Jenkins applied and was found eligible for AFDC benefits in Hennepin County. Plaintiff's husband, who was disabled as a result of a job-related accident, had workers' compensation and social security disability claims pending at the time of the AFDC application. Plaintiff advised the AFDC caseworker of these pending claims, but was not informed of the lump sum formula used by defendant. Plaintiff's husband received a disability check in the amount of $5,752 on October 31, 1983. That same day, he wrote a check in the amount of $3,863.75 to satisfy the arrearage on his home mortgage because his property was about to go into foreclosure. Plaintiff's husband also wrote a check for $1,366 on that day to satisfy an overdue car repair bill. The remaining $500–$600 was spent on other bills and on clothing for plaintiff's children.

When plaintiff reported the receipt of the disability settlement to Hennepin County welfare authorities two days later, on November 2, 1983, she was advised for the first time of the lump sum rule. On November 3, 1983, Hennepin County advised her that her October and November AFDC grants would be considered an overpayment,[6] that her benefits would be terminated as of December 1, 1983, and that she would remain ineligible until May, 1984. Plaintiff appealed the decision and her benefits were continued pending the outcome. Defendant rejected plaintiff's appeal on August 9, 1984 and notified plaintiff on September 5, 1984 that she would be charged an overpayment of $5,464.

## DISCUSSION

### I. CLASS CERTIFICATION

Plaintiffs define the class they seek to represent as follows:

those individuals in the state of Minnesota who are otherwise eligible for AFDC benefits and who have been, or will be, found ineligible for AFDC benefits for a predetermined number of months as a consequence of receipt of lump sum income by one of the members of an AFDC assistance unit of which they have been a member.

Fed.R.Civ.P. 23(a) sets forth four prerequisites to the maintenance of a class action:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

---

**4.** Food stamps and medical assistance benefits are supplements to AFDC and are normally terminated by defendant when AFDC benefits are terminated due to receipt of a lump sum.

**5.** The Court allowed Jenkins to intervene on September 21, 1984, pursuant to Fed.R.Civ.P. 24(b).

**6.** Overpayments are AFDC benefits to which the recipient is not entitled. In order to recoup overpayments, defendant reduces the monthly AFDC grant (once reinstituted) until the full amount has been recovered. Federal regulations require the states to take this action. 45 C.F.R. § 233.20(a)(13).

The party seeking to represent the class bears the burden of establishing that all four requirements are satisfied. *Smith v. Merchants & Farmers Bank of West Helena, Arkansas,* 574 F.2d 982 (8th Cir.1978). Prior to the consideration of the criteria set forth under Rule 23(a), the Court must find that a precisely defined class exists, *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976) and also that the class representative(s) is a member of the class. *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) ("class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members"). These requirements are implicit prerequisites to the maintenance of an action under Rule 23.

■ If plaintiffs satisfy the implicit and explicit requirements of Rule 23(a), they then must demonstrate that the action sought to be certified falls within one of the three categories set forth in Rule 23(b). Plaintiffs contend that this action may be properly maintained as a class action because it is the type of case set forth in Rule 23(b)(2):

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]

### A. Existence of precisely drawn class

■ The third party defendant argues that the proposed class is overbroad because it includes persons who have not suffered or may never suffer any injury. These individuals would include families who the third party defendant contends will find it less difficult to rely on their own resources, or who may no longer qualify for or want AFDC as a result of receiving a lump sum. While their numbers would no doubt be few (or perhaps even non-existent), there may be some individuals in the proposed class who will receive a lump sum settlement so large that it enables them to live comfortably. Despite their ineligibility for AFDC benefits, these individuals would not suffer injury from defendant's policy and would therefore lack standing. The definition of a class cannot be so broad that it includes persons without standing to bring the action on their own behalf. Each class member must have standing to bring the suit in his own right. *McElhaney v. Eli Lilly & Co.,* 93 F.R.D. 875, 878 (D.S.D. 1982); *Lamb v. Hamblin,* 57 F.R.D. 58, 60–61 (D.Minn.1972).

■ The slight overbreadth in the proposed class definition is not fatal. The Court has the authority to re-define a proposed class in such a way as to allow the class action to be maintained. *Lamb,* 57 F.R.D. at 60 (limiting the class to those individuals with standing); *Metropolitan Area Housing Alliance v. U.S. Department of Housing and Urban Development,* 69 F.R.D. 633 (D.Ill.1976). Accordingly, the Court has redefined the class as follows, in order to exclude those individuals who might lack standing to bring an action on their own behalf:

> those individuals in the state of Minnesota who are otherwise eligible for AFDC benefits and who have been, or will be, found ineligible for AFDC benefits for a predetermined number of months as a consequence of receipt of lump sum income by one of the members of an AFDC assistance unit of which they have been a member, <u>and whose lump sum has or will become unavailable to them in whole or in part prior to their re-eligibility for benefits.</u>

(Court's addition to plaintiff's proposed class underlined.)

### B. Numerosity

■ Rule 23(a)(1) mandates that the class be so large that joinder would be impracticable. Neither defendant nor third party defendant opposes class certification on this ground. Indeed, defendant has conceded that joinder would be impracticable. Moreover, plaintiffs have identified at least 70 families who were adversely affected by defendant's lump sum rule during the year

prior to their motion for certification. There is no definite standard as to what size class satisfies the requirement of Rule 23(a)(1). 7 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1762. Courts have, however, certified classes containing as few as 25, *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa.1968) and 35, *Fidelis Corp. v. Litton Industries, Inc.*, 293 F.Supp. 164 (S.D.N.Y.1968). The decision as to whether joinder is impracticable is essentially a subjective determination based on expediency and the inconvenience of trying individual suits. *Pabon v. McIntosh*, 546 F.Supp. 1328, 1333 (E.D.Pa.1982). In the case before the Court, certification of a class would clearly serve important interests of judicial economy. Accordingly, the Court finds that the numerosity requirement of Rule 23(a)(1) has been met.

### C. Common questions of law or fact

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class. This provision does not require a complete identity of legal claims. *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir.1978). Moreover, the United States Court of Appeals for the Eighth Circuit has held on several occasions that factual differences are not fatal to the maintenance of a class action, as long as common questions of law exist. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir.1980); *Kirby v. Colony Furniture Co.*, 613 F.2d 696, 699–700 (8th Cir.1980). In civil rights actions, the courts generally take a somewhat relaxed view of this requirement. *See, e.g., Lyons v. Weinberger*, 376 F.Supp. 248, 263 (S.D.N.Y.1974); *Pabon v. McIntosh*, 546 F.Supp. 1328, 1333 (E.D.Pa.1982).

Plaintiffs argue that there are common questions of law since all of the class members have been denied benefits as a result of defendant's lump sum policy. Defendant and third party defendant have not specifically contended that plaintiffs have failed to satisfy the commonality requirement of Rule 23(a)(2). The third party

defendant does argue, however, that class certification should be denied because of the variety of factual situations presented by the proposed class. This is essentially a commonality argument, and it raises the most serious question with regard to class certification.

The only decision that has been called to the Court's attention which has considered the propriety of certifying a class action in a suit posing the issues presently before the Court is *Vermeulen v. Kheder*, Civ. No. K 82–135 (W.D.Mich. Dec. 20, 1983). The court in *Vermeulen* refused to certify a class in a challenge to the lump sum rule, in part because it found that plaintiffs had failed to satisfy the requirements of Rule 23(a)(2). Plaintiffs in *Vermeulen*, as in the instant case, argued that there was a common question of law as to whether the lump sum rule was being legally applied to the members of the proposed class. The court rejected this argument because of the divergent factual settings in which the class members lost their lump sum income:

> These factual differences are sufficient to preclude class certification under 23(a)(2). The factual context of the case is obviously significant in determining whether a particular individual is able to establish whether the application of the lump sum rule violates to him the Social Security Act and/or the due process and equal protection clauses. For example, a person who spent his lump sum on alcohol may be less entitled to relief than a person whose spouse absconded with the lump sum.

*Id.*, slip op. at 8–9.

The case before the Court clearly presents a variety of factual situations. A lump sum may become unavailable to a class member because it is stolen, as in the case of the original named plaintiff Sharon Slaughter. It may become unavailable because the class member expends the money on past debts prior to learning of the lump sum rule and prior to having AFDC benefits terminated, as in the case of intervenor Kathryn Jenkins. Finally, the lump sum

may become unavailable to a class member subsequent to termination of AFDC benefits, simply because the lump sum funds are totally expended, as in the case of plaintiff Helen Stewart. In the latter category, the funds may be exhausted as a result of good faith expenditures on basic living necessities, or as a result of simply spending the money too quickly.

Despite the existence of these factual variations, the Court rejects the approach taken by the district court in *Vermeulen,* and finds that plaintiffs have demonstrated sufficient common questions of law in order to meet the requirements of Rule 23(a)(2). A number of courts have held that a diversity of factual circumstances need not defeat class certification where common legal questions exist. *See, e.g., Leist v. Shawano County,* 91 F.R.D. 64, 67 (E.D.Wisc.1981) (factual differences between class members regarding eligibility or amount of aid under welfare program, but plaintiffs uniformly impacted by absence of written criteria for program); *Like v. Carter,* 448 F.2d 798, 802 (8th Cir. 1971), *cert. denied,* 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972) (class of welfare recipients whose applications were not acted upon timely; common *legal* questions include interpretation and validity of state and federal statutes and regulations).

The cases that the district court relied on in *Vermeulen* are distinguishable. The legal questions in each of those cases were mixed fact-law questions which a court could not adjudicate without looking at the facts of each case. In *Metcalf v. Edelman,* 64 F.R.D. 407 (N.D.Ill.1974), which involved a challenge to a public shelter subsidy system, the issue before the court was whether the defendants were providing members of the proposed class with livable shelter; the resolution of such a legal issue would obviously hinge directly on the facts of each individual case. In *Fuzie v. Manor Care, Inc.,* 461 F.Supp. 689 (N.D.Ohio 1977), the other case relied on by the court in *Vermeulen,* the proposed plaintiff class consisted of Medicaid recipients residing at private nursing homes who alleged that their discharges from such homes were based solely on their Medicaid status. Again, a determination whether a discharge was authorized under the applicable federal regulations would require an examination of the facts of each particular case. In the case before the Court, by contrast, plaintiffs make *generalized* procedural and substantive legal claims which do not turn on the facts of individual cases.

Plaintiffs advance five arguments for striking down the lump sum policy. All but one of these are common to the class. First, plaintiffs argue that the policy violates the Social Security Act because it does not take into account the actual availability of the funds in determining eligibility. This is a strictly legal argument that does not require an inquiry into the facts of each class member. Second, plaintiffs argue that the policy violates the equal protection clause of the fourteenth amendment by irrationally distinguishing between current recipients and non-recipients of AFDC. Again, this is a generalized legal argument, common to all class members, the resolution of which does not require an examination of individual fact situations. The same can be said about plaintiffs' third and fourth arguments—that the policy violates due process by establishing an irrebuttable presumption of unavailability and by punishing innocent AFDC recipients for the wrongdoing of others.

The only legal question which is not common to all class members is the issue of whether defendant's failure to provide adequate notice of the lump sum policy violates federal regulations or the due process clause. Named plaintiff Kathryn Jenkins' complaint squarely raises the notice issue; named plaintiff Helen Stewart does not have standing to raise the notice issue, since she exhausted her lump sum funds *after* she was informed of the policy. There are presumably other members of the class who were and are similarly unaffected by the lack of notice.

The fact that plaintiffs' notice claim may not be common to all members of the proposed class is an insufficient rea-

son for denying class certification for failure to meet the requirements of Rule 23(a)(2). While there is no quantitative or qualitative test of commonality that must be met in order to satisfy Rule 23(a)(2); 7 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1763 at 603, there is considerable authority that there need not be complete identity of legal claims. *E.g., Johnson v. American Credit Co. of Georgia.* In *Tonya K. v. Chicago Board of Education,* 551 F.Supp. 1107, 1111 (N.D.Ill.1982), the district court stated that Rule 23(a)(2) was satisfied as long as there is a single issue in common to all class members. The use of the plural "questions" in the language of the rule itself suggests a slightly stricter standard—that more than one issue of law be common to the class members. 7 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1763 at 604. Whichever standard is used, there are a substantial number of legal questions which are common to the entire class in this case, so as to warrant class certification. Moreover, while there may be some individuals in the class who did not or will not suffer as a result of the allegedly inadequate notice, it is apparent that the lack of notice is an endemic, system-wide problem which likely affects a substantial portion of the class. Finally, the policies of judicial economy and litigant convenience which underly the class action mechanism militate in favor of a finding that the commonality requirement has been met. *See Taliaferro v. State Council of Higher Education,* 372 F.Supp. 1378, 1387 (E.D.Va.1974).

### D. Typicality

Rule 23(a)(3) requires that the claims of the representative parties be typical of the class claims. Plaintiffs correctly cite *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830–31 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977) for the

Eighth Circuit's fairly relaxed interpretation of this requirement:

> [T]he typicality provision requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff. . . .
>
> . . . .
>
> . . . . When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment.

It is fairly clear that named plaintiffs Helen Stewart and Kathryn Jenkins have grievances that are similar to other class members.[7] As plaintiffs point out, the other class members received lump sum income and were denied eligibility as a result. The fact that the named representatives' claims are typical is further evidenced by an affidavit submitted by one of defendant's employees, which asserts that 41 out of 42 administrative appeals of lump sum terminations concerned recipients who had spent the lump sum for various reasons.[8]

### E. Adequacy of representation

The adequacy requirement of Rule 23(a)(4) actually embodies two requirements. First, the representative must not possess interests which are antagonistic to the interests of the class. Second, the plaintiffs must be represented by counsel of sufficient diligence and competence to fully litigate the claim. *Senter v. General Motors Corp.,* 532 F.2d 511, 525 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). Neither defendant nor third party defendant challenges the second aspect of this requirement; the qualifications of the Legal Aid Society of Minneapolis are adequate with respect to this type of litigation. Defendant does, however, strenuously argue that the named

---

**7.** Defendant's sole argument on the typicality requirement is that the original named plaintiff Slaughter's claims are not typical of the class, since there are very few cases in which the lump sum becomes unavailable for reasons truly beyond the control of the recipient (Slaughter's lump sum was stolen). Since Slaughter

has settled her claim, this argument is no longer valid.

**8.** Affidavit of Marcia Schmidt, policy analyst, Minnesota Department of Human Services, September 7, 1984.

plaintiffs cannot fairly and adequately protect the interests of the class.

 Defendant's argument is based on a June, 1984 amendment to the lump sum provision of the Social Security Act at issue in this case, 42 U.S.C. § 602(a)(17); CONG. REC., June 22, 1984 at 6554. This amendment gives states the *option* of recalculating an AFDC recipient's period of ineligibility resulting from lump sum income in three situations, commencing October 1, 1984:

1) where the recipient's benefit level would have increased during the period;

2) where the lump sum income has become unavailable to the recipients for reasons beyond their control;

3) where the family expends the lump sum funds on medical expenses.

*Id.* While this amendment does not mandate that the states consider the availability of the lump sum in the above three situations, defendant contends that the history of the instant litigation (in particular, defendant's third party complaint against the HHS alleging that the lump sum regulation is inconsistent with the Social Security Act) demonstrates its intent to exercise the option.

Defendant, relying on *Kremans v. Bartley*, 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977), argues that the recent amendment to the Social Security Act fragments the proposed class and renders the named plaintiffs inadequate representatives of the class. A major portion of this argument is that the interests of the original named plaintiff, whose lump sum was stolen, are incompatible with the interests of plaintiff Stewart, who spent her lump sum, since the recent statutory amendments strengthen the former's case and weaken the latter's. Since the original plaintiff has settled, this argument is no longer valid. Moreover, there are no incompatible interests between plaintiff Stewart and plaintiff Jenkins; both had their lump sum become unavailable to them because they spent it prior to the end of their ineligibility period. The recent statutory amendment to the lump sum rule is an insufficient reason to deny class certification in this case. First, the exceptions to the rule become applicable only if defendant chooses to implement them, and it has yet to officially exercise this option. Second, and more importantly, even if defendant does exercise the statutory option allowing for limited consideration of the lump sum's availability, the amendment has no effect on plaintiffs' equal protection claims or regulatory and due process lack of notice claims.

**F. Rule 23(b)(2)**

 Rule 23(b)(2) provides that the defendant must have "acted or refused to act on grounds generally applicable to the class," so that it is appropriate to grant final injunctive relief with respect to the class as a whole. Plaintiffs have met this requirement. They correctly cite *Coley v. Clinton*, 635 F.2d 1364, 1379 (8th Cir.1980) for the proposition that the requirements of Rule 23(b)(2) are to be construed liberally in the context of civil rights suits. *Coley* held that a district court's discretion to deny class certification on the basis of this provision is limited. *Id.* at 1378. Since the plaintiffs have met the requirement of Rule 23(a), and since defendant has a uniform policy with respect to the class that is susceptible of injunctive relief, plaintiffs should be certified as a class under Rule 23(b)(2).

**II. SUMMARY JUDGMENT**

**A. No material issues of fact**

 Fed.R.Civ.P. 56(c) provides that summary judgment may be granted in favor of the moving party if there are no genuine issues as to material fact and if the movant demonstrates that it is entitled to judgment as a matter of law. The facts in the case before the Court are not disputed by any of the parties, so that consideration of the legal questions on summary judgment is appropriate.

**B. Statutory issues**

The AFDC program, Title IV-A of the Social Security Act, provides cash assist-

ance to needy children who have been deprived of the care and support of one of their parents through either death, continued absence, incapacity or unemployment. 42 U.S.C. § 606(a). In order to establish eligibility for benefits applicants must meet income and asset limitations which are prescribed by law.

■■■ AFDC is a program of "cooperative federalism" funded partly by the states and partly by the federal government. State programs must comply with federal law in order to receive federal funds. 42 U.S.C. §§ 601, 602(a). States may not impose eligibility requirements which exclude from coverage persons who are eligible under federal statutes. *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *Townsend v. Swank*, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

The lump sum policy at issue in this case stems from the Omnibus Budget Reconciliation Act of 1981, which amended the Social Security Act in several important respects. Prior to the 1981 Act, when an AFDC beneficiary received a lump sum he or she was deemed ineligible for the month of receipt, but could reapply for benefits as soon as the sum was exhausted. The 1981 amendment was passed because Congress felt that this practice created a disincentive to use lump sum income for ordinary living expenses. The amendment to the Social Security Act required states to compel AFDC recipients to budget their lump sum income:

> A state plan for aid and services to needy families with children must ... 
>
> provide that *if a person* specified in paragraph (8)(A)(i) or (ii) *receives* in any month *an amount of income which,* together with all other income for that month not excluded under paragraph (8), *exceeds the State's standard of need* applicable to the family of which he is a member—
>
> (A) such amount of income shall be considered income to such individual in the month received, and *the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals* (i) *the sum of such amount and all other income received in such month,* not excluded under paragraph (8), *divided by* (ii) *the standard of need applicable to such family,* and
>
> (B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A)[.]

42 U.S.C. § 602(a)(17) (emphasis added). This statutory provision did not explicitly require the consideration of the availability of the lump sum, nor did it provide for any explicit exceptions to the lump sum formula. The implementing regulations promulgated by HHS, however, provided for a narrow exception to the lump sum formula in "life threatening circumstances."

> *A State may shorten the period of ineligibility where it finds that a life-threatening circumstance exists, and the non-recurring income causing the period of ineligibility has been or will be expended in connection with the life-threatening circumstance.* Further, until that time the non-recurring income must have been used to meet essential needs and currently the assistance unit must have no other income or resources sufficient to meet the life-threatening circumstance.

45 C.F.R. § 233.20(a)(3)(ii)(D) (emphasis added).[9]

---

**9.** In a published commentary accompanying the regulation, the Secretary of HHS stated:

> After a State makes a determination of future ineligibility based on this provision, future changes in family composition or other relevant circumstances do not change or alter the period of ineligibility. There is also no waiver or good cause provision which can be applied to reduce the period of ineligibility.

46 Fed.Reg. 46755 (September 21, 1981); 47 Fed.Reg. 5656 (February 5, 1982).

Defendant Levine responded to the 1981 amendment to the Social Security Act by adopting the lump sum policy at issue in this litigation. Department of Public Welfare Instructional Bulletin # 82–3 Attachment 13. This policy provides that lump sum income is considered available to the AFDC recipient's family regardless of whether the lump sum is *actually* available.

Section 602(a)(17) was recently amended again, this time to give states the option of recalculating the period of ineligibility caused by receipt of a lump sum in the following three situations:

(i) an event occurs which, had the family been receiving aid under the State plan for the month of the occurrence, would result in a change in the amount of aid payable for such month under the plan, or (ii) the income received has become unavailable to the members of the family for reasons that were beyond the control of such members, or (iii) the family incurs, becomes responsible for, and pays medical expenses (as allowed by the State) in a month of ineligibility determined under subparagraph (A) (which expenses may be considered as an offset against the amount of income received in the first month of such ineligibility)[.]

Cong.Rec., June 22, 1984 at 6554. Defendant has stated that it intends to exercise the option under this provision, but has yet to formally issue a new policy. The new provision went into effect on October 1, 1984. *Id.*

 Plaintiffs argue that the defendant's lump sum policy violates the Social Security Act because it does not take into account the actual availability of lump sum funds in determining AFDC eligibility.[10] The Act provides that state agencies,

shall, in determining need, take into consideration any other income and resources of any child or relative claiming

aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid[.]

42 U.S.C. § 602(a)(7). Plaintiffs correctly cite a number of cases that have interpreted this statutory provision to require that states consider only income and resources that are *actually available* to the recipient. *Engelman v. Amos*, 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971); *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1979); *Jamroz v. Blum*, 509 F.Supp. 953 (N.D.N.Y.1981). HHS has promulgated adopted regulations which plaintiffs argue incorporate the principle of actual availability:

Net income ... and resources available for current use shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

45 C.F.R. § 233.20(a)(3)(ii)(D). In *Shea v. Vialpando*, 416 U.S. 251, 261–62, 94 S.Ct. 1746, 1754, 40 L.Ed.2d 120 (1974), the Supreme Court noted that the purpose of section 602(a)(7) and the above regulation is to ensure "that the amount of assistance actually paid is based on the amount needed in the *individual* case ... [and upon an] assessment of the particular individual's available income and resources."

Plaintiffs argue that while the lump sum statute, 42 U.S.C. § 602(a)(17), does not explicitly address the question of the availability of lump sum income, it must be read together with section 602(a)(7), which does require a consideration of actual availability. Plaintiffs rely on *Vermeulen v. Kheder*, No. K 82–135 (W.D.Mich. June 3,

---

**10.** In their complaint, plaintiffs allege that the lump sum rule violates the Social Security Act because it is applied to recipients who have no earned income in the month of receipt of the lump sum. The Eighth Circuit has recently held, in *Faught v. Heckler,* 736 F.2d 1235 (8th

Cir.1984), that application of the lump sum rule is not limited to AFDC recipients who have earned income in the month of receipt. In light of this decision, plaintiffs dropped this statutory claim.

1982), in which the United States District Court for the Western District of Michigan relied primarily on the actual availability requirement in granting a preliminary injunction against Michigan's lump sum policy. The court in *Vermeulen* held that the "life threatening" exception in the HHS' regulation is much too narrow to satisfy the actual availability requirement, since lump sum funds can become unavailable for reasons other than those described in the regulation. It observed that "the removal of a lump sum itself can create . . . a life threatening circumstance to the children of the family." *Id.* slip op. at 16.

The Court must reject plaintiffs' statutory arguments. The question of congressional intent as to the consideration of actual availability is clearly settled, at least with respect to cases arising after October 1, 1984, the date of the recent amendment to the lump sum provision of the Act. The amendment to section 602(a)(17) does not mandate that the actual availability of lump sum funds be taken into consideration—it gives states the *option* of doing so in three particular situations. Given this expression of legislative intent, there is clearly no requirement that state welfare agencies take actual availability into account with respect to lump sums. Moreover, the amendment makes it clear that if states choose to take availability into account, they may do so only in the three circumstances outlined by the statute.

■■■ Plaintiffs make a separate argument that class members in plaintiff Helen Stewart's situation, who cannot make their lump sum last for the entire period of ineligibility, despite a good faith effort, fall into the second category of the new provision, section 602(a)(17) (providing for recalculation in cases where the lump sum has become unavailable for reasons beyond the

control of the recipient). While there is an intuitive appeal to this argument, since the loss of food stamps and medical benefits which accompanies AFDC termination makes it extraordinarily difficult to budget the lump sum over the entire period of ineligibility, plaintiffs' argument is incorrect as a matter of statutory interpretation.

This is evident when one examines the structure of the new amendment to section 602(a)(17). One of the circumstances in which the period of ineligibility may now be recalculated is where the recipient spends the lump sum on medical expenses. Since Congress drafted this specific category of expenditures which might exhaust a lump sum, it is not likely that it intended for other expenditures which might exhaust a lump sum to fall within the provision for "reasons beyond the control of the recipient." This provision was rather likely aimed to cover situations where a recipient loses the lump sum or is robbed or otherwise deprived of the money. A second reason for rejecting plaintiffs' statutory argument is that the HHS' implementing regulations leave it up to the state to define "unavailable for reasons beyond the control of the recipient." 45 C.F.R. § 233.-20(a)(3)(ii)(F) (effective October 1, 1984).[11] The plaintiffs' statutory arguments with respect to those members of the class affected by the lump sum policy after October 1, 1984, then, must fail.

■■■ A separate question of statutory interpretation exists with respect to those members of the class who have been affected by the lump sum policy prior to the most recent legislation. The lump sum provision enacted in 1981 contained no express provision regarding the availability of funds. The most plausible interpretation of this silence is that Congress did not intend for availability to be considered.[12]

---

**11.** Recalculation of the period of ineligibility due to the unavailability of a lump sum for reasons beyond the control of the recipient is possible, of course, only if the state chooses to exercise this statutory option.

**12.** Plaintiffs make a strong argument (which defendant joins) that Congress did *not* intend

for the lump sum formula contained in 42 U.S.C. § 602(a)(17) to apply to individuals whose lump sum becomes unavailable to them through no fault of their own. The original named plaintiff in this action, whose lump sum was stolen, and the plaintiff in *Vermeulen v. Kheder,* whose husband absconded with the lump sum, are examples of such individuals.

The lump sum statute was enacted by Congress in order to correct what it perceived to be a disincentive for AFDC recipients to use the lump sum income they received to support themselves. *Faught v. Heckler*, 736 F.2d 1235, 1236 (8th Cir.1984). The committee report accompanying the legislation recommended that

> lump sum payments should be considered available to meet the ongoing needs of an AFDC family. The present treatment of such payments has the perverse effect of encouraging the family to spend such income as quickly as possible in order to retain AFDC eligibility.

Report of the Committee on the Budget, S.Rep. No. 139, 97 Cong. 1st Sess. 505 (1981), *reprinted in* 1981 U.S.Code Cong. & Admin.News 396, 771. The lump sum statute, an admittedly harsh measure, was intended to force AFDC recipients to budget their lump sum according to the monthly grant amount which they would have been receiving. Plaintiffs' position, that the lump sum should be considered "unavailable" to a recipient who spends the money on essential purchases before the period of ineligibility runs out, is contrary to this clearly expressed congressional intent. While the wisdom or the justice of the policy behind the lump sum statute is questionable, it appears beyond question that Congress decided in 1981 that lump sum funds should be considered available regardless of whether they have been expended before the ineligibility period has expired. *See Jackson v. Guissinger*, 589 F.Supp. 1288, 1298 (W.D.La.1984) (lump sum funds used to pay off previously incurred debt held "available for current use").

The 1984 amendment to the lump sum statute is further evidence that Congress did not intend to incorporate a broad availability requirement when it passed the 1981 act. This amendment clearly represents an attempt to ameliorate some of the harshness of the 1981 act by providing for specific, limited instances when non-availability may be considered. This history of the provision militates against an interpretation that the 1981 act was intended to include a broad requirement of availability. Given the fact that the recent amendment allows for a limited credit against the strict lump sum budget for medical expenditures, it is extremely unlikely that Congress intended for the 1981 statute to contain a broader exception for good faith expenditures. This conclusion is strengthened by the fact that the ameliorative 1984 amendment simply gives states the *option* of taking non-availability into account, therefore making it highly doubtful that Congress intended to *mandate* consideration of non-availability in the 1981 act. Accordingly, the Court rejects plaintiffs' argument that defendant's lump sum policy violates the Social Security Act with respect to class members whose benefits were terminated both before *and* after the 1984 amendment.

### C. Notice issues

██ Plaintiffs argue that the defendant's failure to provide Minnesota AFDC recipients with adequate advance notice of the lump sum rule violates federal regulations, 45 C.F.R. § 206.10(a)(2)(i), and the due process clause of the fifth and fourteenth amendments. Because the Court has concluded that the lack of notice to AFDC recipients constitutes a violation of the federal regulation, it will not reach the constitutional issue raised by plaintiffs.

The federal regulation which requires notice provides:

> Applicants shall be informed about the eligibility requirements and their rights and obligations under the program. Un-

---

The Court does not reach the question of whether the lump sum statute as enacted in 1981 was intended to apply to persons who actually lost physical control over their lump sum. The original named plaintiff who raised this issue has settled, and none of the remaining class representatives have standing to raise this claim.

Moreover, plaintiffs have not been able to identify any class members who fall into this category, and defendant's research has suggested that in virtually all cases the lump sum becomes unavailable because the individual spends the money.

der this requirement individuals are given information in written form, and orally as appropriate, about coverage, conditions of eligibility, scope of the program, and related services available, and the rights and responsibilities of applicants for and recipients of assistance. Specifically developed bulletins or pamphlets explaining the rules regarding eligibility and appeals in simple, understandable terms are publicized and available in quantity.

45 C.F.R. § 206.10(a)(2)(i).

Plaintiffs contend that no material of the type envisioned by the regulations exists regarding the lump sum rule. Defendant does not advise AFDC applicants of the lump sum rule at the time they apply for benefits. The only information provided by defendant to Minnesota AFDC recipients regarding the lump sum policy has been a letter dated September 18, 1981. This letter merely told recipients that receipt of a lump sum may "possibly" affect their eligibility, without detailing the lump sum formula or its inflexible application, and thus fell short of the requirement that applicants are to be advised of "conditions of eligibility." 45 C.F.R. § 206.10(a)(2)(i). Furthermore, given the considerable turnover on the welfare rolls, the notice was inadequate because it was sent out only once. No class member who applied for AFDC after September 18, 1981 has received *any* written notice of the lump sum policy. Plaintiffs have offered evidence, which defendant has not contradicted, that recipients are sometimes not advised of the lump sum rule until the defendant sends them a termination of benefits notice; this notice may come as late as a month after the receipt of the lump sum.

There is no question that the lack of advance notice of defendant's policy results in a grossly unfair application of the lump sum rule. The lack of advance notice makes it essentially impossible for the majority of AFDC recipients to budget their lump sums according to the rigid formula imposed by defendant. Recipients are told that they must make their lump sum last until a certain date, but by the time they are so advised, all or part of their funds are gone. The fact that the lump sum funds are spent prior to receipt of notice of the policy is not surprising, given the fact that AFDC recipients are living at a subsistence level. Plaintiff Jenkins' case is illustrative in this regard. While Jenkins was given notice of the lump sum rule two days after she received the funds, at the time she reported receipt of the money, she had already spent almost the entire amount on children's clothing, unpaid bills, and her home mortgage which was about to go into foreclosure. The inequity of applying the lump sum budgeting formula to an individual in this situation is glaring.

The few cases which have discussed the scope of the federal notice regulation are not particularly helpful in delineating the defendant's responsibilities. *See Simpson v. Miller,* 535 F.Supp. 1041, 1049 n. 11 (N.D.Ill.1982) (dicta) (regulation requires states to inform recipients of child care cost reimbursements and of condition that child care provider be licensed); *Woodruff v. Lavine,* 399 F.Supp. 1008 (S.D.N.Y.1975) (states under general obligation to inform Medicaid applicants about rights under program); *15,844 Welfare Recipients v. King,* 474 F.Supp. 1374 (D.Mass.1979). If the federal notice regulation is to serve any meaningful function at all, however, surely it must require effective written notice of a policy which can have such drastic consequences on the recipient. The lump sum rule is clearly a critical "condition of eligibility" in the AFDC program of which recipients should be made aware. Advance notice of the lump sum rule is especially important because the former rule allowed AFDC recipients to reestablish their eligibility for benefits once their lump sum was exhausted. Prior to the adoption of the current rule, the defendant would have advised a recipient of a lump sum to reapply for benefits as soon as the funds were unavailable. A recipient familiar with this policy, absent any notice of the change in the rule, would naturally assume that it was still in effect, and would be totally

unable to anticipate the strict budgeting requirements of the new rule.

The defendant's principal objection to plaintiffs' notice claim is that it would be burdensome to give individualized advance notice of an already published regulation which affects a minority of AFDC recipients. Defendant questions where plaintiffs' notice claim would end, given the fact that there are a number of small groups that are affected by particular regulations. The Court is not persuaded by these arguments. First, the fact that the lump sum policy is contained in a published regulation is of no consequence. AFDC recipients cannot be expected to be fully familiar with the Code of Federal Regulations, as the notice regulation itself implicitly recognizes. Second, while the lump sum rule may not affect a majority of AFDC recipients, it has drastic consequences for those who are affected.[13]

Defendant also makes two other arguments, neither of which is convincing. First, defendant argues that plaintiffs receive notice of termination and a hearing prior to the termination of their benefits pursuant to 45 C.F.R. § 205.10(a)(3). This pretermination hearing, however, is strictly a formality for plaintiffs, since receipt of the lump sum is not generally disputed and since defendant's lump sum policy contains no exceptions. Plaintiffs' argument is essentially that it is unfair to impose the harsh budgeting requirements of the lump sum policy on individuals who are not aware of this policy; the existence of a pretermination hearing is no answer to this argument.

Defendant's second argument is that the federal notice regulation simply requires that it provide information about the lump sum policy at the time plaintiffs report the receipt of a lump sum. The first problem with this argument is that defendant does not always inform plaintiffs of their budgeting responsibilities immediately upon plaintiffs' report of receiving the lump sum. Plaintiffs have submitted evidence that in at least some cases, defendant does not advise recipients of the lump sum policy until it sends out the written termination notice; this can be as much as a month after the lump sum is initially reported.[14] The Court believes that *any* delay in advising recipients of the lump sum policy is unfair. The budget which the lump sum policy imposes is extraordinarily difficult, if not impossible, to adhere to. Moreover, since plaintiffs are living at a subsistence level, there is an enormous pressure on them to spend the lump sum as soon as they receive it. In view of these realities, all AFDC recipients should be given advance notice of the details of the lump sum policy. Accordingly, the Court finds that the lack of adequate advance notice of the lump sum policy constitutes a violation of federal regulations. 45 C.F.R. § 206.-10(a)(2)(i). In order to correct this violation, defendant must provide AFDC recipients and applicants with adequate information regarding the details of the lump sum policy, as set forth in the remedial portion

---

**13.** In a statement made during a notice and comment period on section 206.10(a) in 1978, the Secretary of Health, Education, and Welfare rejected an administrative inconvenience argument similar to the one made by defendant in this case. 43 Fed.Reg. 6950 (February 17, 1978). The Secretary made the following observations in response to a state welfare agency's complaint that changing conditions of eligibility necessitated expensive revisions of informational bulletins:

> Although eligibility conditions change as a result of change in law, it is expected that even as instructional material is made available to agency staff regarding program eligibility changes, an informational flyer could also be prepared for public dissemination.

*Id.* This commentary suggests that the notice regulation was intended to provide for complete dissemination of eligibility information to AFDC recipients, notwithstanding administrative convenience.

**14.** See Affidavit of Joyce Olson, September 16, 1983. Olson received a lump sum of $1,120.90 on June 6, 1983, and promptly reported it to her AFDC caseworker two days later. Olson was not given notice of the effect that receipt of this sum would have on her benefits until July 8, 1983. At the time she received this notice, none of the $1,120.90 remained. Olson had spent the funds on accumulated bills and personal items for her child.

of this opinion. Further, defendant must give those members of the class whose benefits were terminated in violation of the regulation an opportunity to apply for corrective payments, as set forth in the remedial portion of this opinion.

### D. Constitutional issues

### (1) Plaintiffs' irrebuttable presumption argument

Plaintiffs' principal constitutional argument is that the defendant's policy violates due process because it presumes the lump sum funds to be available for the entire period of ineligibility, regardless of changes in the family's circumstances that make it impossible to rely on the lump sum funds for support. Plaintiffs argue that the inflexible presumption of continuing availability built into the policy is not rationally related to any legitimate governmental objective. Plaintiffs concede that the purpose of the lump sum policy—to encourage AFDC recipients to use lump sum funds for ordinary living expenses and to discourage them from spending the funds as quickly as possible in order to regain eligibility for AFDC benefits—is a legitimate governmental objective. The focus of their due process argument is rather on the rationality of the relationship between the lump sum rule and that objective.

Plaintiffs' argument that the lump sum policy is irrational rests primarily on the amount of money that lump sum recipients are expected to live on each month. First, plaintiffs point out that when a recipient's AFDC benefits are terminated due to the receipt of a lump sum, his or her monthly food stamp benefits and medical assistance benefits are typically terminated as well.[15] These supplemental benefits are terminat-

ed because the amount of the lump sum often exceeds the maximum resource limits for these programs; separate eligibility criteria exist for the food stamp program, and medical assistance coverage is automatically provided to AFDC recipients. Minn.Stat. § 256B.06(3). Second, increases in the state's standard of need for AFDC recipients during the period of lump sum ineligibility, which reflect increases in the cost of living, do not operate to reduce that period of ineligibility.[16] Plaintiffs correctly point out that because of the manner in which defendant's policy operates, they are expected to live on less money per month than they would have had to if they had not received the lump sum.

Plaintiffs rely on the Supreme Court's decision in *U.S. Department of Agriculture v. Murry*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973). In *Murry*, plaintiffs challenged a provision of the Food Stamp Act which provided that households containing individuals 18 years old or over who had been declared dependent for tax purposes within the previous two years, by taxpayers who were themselves ineligible for food stamps, could not participate in the food stamp program. This provision reflected legislative concern about abuses of the food stamp program by college students. The Supreme Court found that the irrebuttable presumption that the tax dependent's household was not needy for food stamp purposes constituted a violation of due process because it lacked a rational basis. *Id.* at 514, 93 S.Ct. at 2835. Tax deductions taken in previous years with respect to one individual, according to the Court, were not a rational measure of whether the household with which that individual was currently living needed food

---

**15.** While there is no evidence in the record regarding the average value of food stamps and medical assistance payments to families receiving AFDC grants, these programs clearly provide a significant amount of financial support. Plaintiff Stewart's food stamp benefits averaged approximately $80 per month at the time her AFDC benefits were terminated in December of 1982. At oral argument, counsel for plaintiffs

stated that the average value of medical assistance benefits per month is $62.25.

**16.** The most recent amendment to the Social Security Act gives states the option of recalculating the period of ineligibility based on such changes in the level of benefits. 42 U.S.C. § 602(a)(17); Cong.Rec. June 22, 1984 at 6554.

stamps.[17] Plaintiffs argue that the presumption of continued availability built into defendant's lump sum policy is similarly irrational, for the reasons given above, and that it should therefore be held to violate due process.

The proper standard of review in cases involving constitutional challenges to social welfare programs is minimal scrutiny. The United States Supreme Court, in *Fleming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), provided the following description of this standard:

> Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.

*Id.* at 611, 80 S.Ct. at 1372. The Supreme Court has consistently upheld social welfare legislation under the rational basis test. *See, e.g., Schweiker v. Hogan,* 457 U.S. 569, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982) (provision of Medicaid benefits based upon income level rationally related to providing scarce resources to the most needy); *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) (state's reduced standard of need formula, which affected AFDC recipients more adversely than other welfare recipients, rationally related to budget constraints); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (state imposition of AFDC grant ceiling, regardless of family size, rationally related to goal of encouraging employment). The Court is convinced that the defendant and third party defendant in the instant case have satisfied the rational basis test, and that the lump sum policy therefore does not offend the due process clause.

The lump sum rule is rationally related to the legitimate governmental objective of encouraging recipients of lump sums to budget their funds. The defendant's lump sum formula clearly removes the disincentive to budget which existed under previous practice, and therefore contributes to the congressional goal of decreasing AFDC expenditures. The Court recognizes that it may be unfair to use the same lump sum to cut AFDC, food stamps, and medical assistance benefits. The fact that the budgeting requirements are stringent, however, does not make the policy irrational. AFDC, food stamps, and medical assistance each have their own separate eligibility standards, which are set by the states. While it might be a wiser and more humane policy to tie the eligibility criteria for the programs together in such a way that a lump sum recipient could continue to receive food stamps and medical assistance, the fact that a law represents a poor policy judgment does not render it unconstitutional. *See Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 2472, 45 L.Ed.2d 522 (1975).[18]

The instant case is distinguishable from the cases in which the Supreme Court has invalidated an "irrebuttable presumption" on the grounds that it is irrational. *U.S.*

---

**17.** The Court in *Murry* cited two other cases in which it has found that an inflexible legislative classification constitutes an unconstitutional "irrebuttable presumption." *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (statute establishing permanent, conclusive presumption of non-residency for purposes of qualifying for reduced tuition at state university); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (presumption that unwed fathers unfit to raise their children).

**18.** The Court notes that DPW must, after termination of a recipient's automatic eligibility for medical assistance benefits, reconsider eligibility to determine whether the recipient can qualify for medical assistance independently of the AFDC program. Further, if DPW decides to terminate medical assistance, it must provide adequate and timely notice and an opportunity for a hearing prior to termination. Adequate notice would include notice of the right to receive aid pending review of the decision to terminate medical assistance. *See Jackson v. Guissinger,* 589 F.Supp. 1288, 1301 (W.D.La.1984); *Stenson v. Blum,* 476 F.Supp. 1331 (S.D.N.Y. 1979), *aff'd without opinion,* 628 F.2d 1345 (2d Cir.), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980).

*Department of Agriculture v. Murry; Vlandis v. Kline; Stanley v. Illinois.* In these cases, the Supreme Court engaged in a hybrid due process/equal protection analysis. In determining that an irrebuttable presumption was unconstitutionally irrational, the Court looked to whether the classification established by the legislature conclusively presumed facts to be true which might turn out otherwise upon an examination of each individual case. Justice Stewart, in his concurrence in *U.S. Department of Agriculture,* noted that the necessity for an individual hearing was an important element in determining whether a legislative classification amounts to an invalid irrebuttable presumption. 413 U.S. at 515–17, 93 S.Ct. at 2836–37. In the case before the Court, plaintiffs are arguing that the lump sum policy is irrational because the budget which it requires recipients to live on is too harsh. There is no rigid classification in this case which rests on a presumption which could be proven untrue in certain cases if a hearing was available. Rather, plaintiffs are taking issue with a basic legislative policy judgment regarding the amount of money which lump sum recipients are expected to live on. As the Court has already indicated, it believes that this policy has a rational basis, and that it is therefore not violative of due process.

### (2) Plaintiffs' due process "punishment" argument

■ Plaintiffs argue that the lump sum policy violates due process by punishing AFDC recipients for the actions of third parties over whom they have no control. Plaintiffs contend that it is unconstitutional to deprive children, the intended beneficiaries of the AFDC program, of benefits because their parents have dissipated the lump sum. The flaw in this argument is the characterization of the deprivation of AFDC benefits as a "punishment." Defendant correctly distinguishes two of the cases cited by plaintiffs on the ground that they clearly involved sanctions for wrongdoing. *Cross v. United States,* 512 F.2d 1212 (4th Cir.1975) (suspension of grocer

from food stamp program for alleged violations of the Food Stamp Act); *Wright v. Arkansas Activities Association,* 501 F.2d 25 (8th Cir.1974) (termination of coach's employment contract for violating rule against conducting pre-season practice). There is no intent to punish wrongdoing in the case before the Court. While the lump sum policy admittedly has a harsh impact on AFDC recipients, the Court cannot accept plaintiffs' characterization of its operation as a "punishment" which offends due process.

### (3) Equal protection

Plaintiffs argue that defendant's lump sum policy violates the equal protection clause of the fifth and fourteenth amendments to the Constitution because it irrationally distinguishes between recipients of AFDC and non-recipients of AFDC. The latter group would include those persons who receive a lump sum and then subsequently apply for AFDC benefits, or who receive a lump sum during the application process. Defendant's policy does not prohibit non-recipients who receive a lump sum from spending the entire sum and then applying for AFDC benefits.

■ The appropriate standard of review in equal protection challenges to social welfare legislation is the rational basis test. *E.g., Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The inquiry under this test is whether the challenged classification bears a rational relationship to a legitimate governmental objective. The Court finds that the distinction which defendant's policy draws between recipients and non-recipients is rational and that the policy therefore does not offend the equal protection clause. Non-recipients are not subject to state welfare agency program rules, so that it is quite rational not to apply the policy to them. Moreover, as the federal third party defendant points out, it would be unfair to apply the lump sum budgeting formula to non-recipients who have no notice of AFDC rules and regulations. While

Congress could have enacted a lump sum policy which required retroactive consideration of lump sum income in determining eligibility for AFDC benefits, it was surely not required to do so by the Constitution.

## E. Remedy

■ The Court has determined that the defendant's lump sum policy violates the federal regulation requiring notice of AFDC eligibility requirements, 45 C.F.R. § 206.10(a)(2)(i). In order to remedy this violation, the defendant must take steps necessary to ensure that all AFDC recipients are aware of their budgeting responsibilities under the lump sum rule. Accordingly, the Court orders the defendant to forthwith prepare a notice explaining the lump sum policy, which shall be mailed to all current AFDC recipients. The defendant is further ordered to include such an explanation in the information which it provides to all individuals who apply for AFDC benefits. Finally, the explanation of the lump sum policy should also be included in the material that is given to recipients at the time of their periodic six-month reevaluation for benefits. The notice to AFDC recipients and applicants regarding the lump sum policy should provide a thorough explanation of the mechanics of the rule.

Plaintiffs have also requested that the Court order the defendant to notify all members of the class that their AFDC benefits may have been improperly terminated or denied under the challenged policy, and to afford them an opportunity to apply for corrective payments from their local welfare agencies. The Court agrees that this type of "notice relief" is warranted in this case. Under the Supreme Court's holding in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court may not issue an order requiring the defendant to make retroactive payments of benefits that were improperly denied to members of the plaintiff class. Such an order is barred by the eleventh amendment.

*Id.* In *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), however, the Supreme Court sanctioned the type of notice relief requested by plaintiffs in the instant case. The notice that was approved in *Quern* was a "mere explanatory notice to applicants advising them that there is a state administrative procedure available if they desire to have the state determine whether or not they may be eligible for past benefits." *Id.* at 336, 99 S.Ct. at 1142. In holding that an order mandating this type of notice is consistent with the eleventh amendment, the Supreme Court made the following comments:

> The mere sending of that notice does not trigger the state administrative machinery. Whether a recipient of notice decides to take advantage of those available state procedures is left completely to the discretion of that particular class member; the federal court plays no role in that decision. And whether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, courts, and legislature, not with the federal court.

*Id.* at 348, 99 S.Ct. at 1149 (footnote omitted).

The Court has determined that those members of the class who had their AFDC benefits terminated in violation of 45 C.F.R. § 206.10(a)(2)(i) should be given the opportunity to apply to the defendant for supplemental benefits which would make them whole.[19] Accordingly, the defendant is ordered to prepare a notice which it will send to all those members of the class who have had their benefits terminated due to receipt of a lump sum since the adoption of defendant's policy. The purpose of this notice is simply to inform the class members that they may apply to defendant for correct payments. Defendant should prepare the notice in consultation with counsel for plaintiffs, and submit it to the Court for approval.

---

**19.** Members of the class such as Stewart, who did not expend any of their lump sum funds prior to receiving notice of the defendant's poli-

cy, did not have their benefits terminated in violation of the federal notice regulation.

CONCLUSION

Based on the foregoing, **IT IS ORDERED** that

1. plaintiffs' motion for class certification is granted;

2. plaintiffs' motion for summary judgment is denied in part and granted in part;

3. defendant's and third party defendant's motions for summary judgment are denied in part and granted in part;

4. defendant is to provide adequate advance notice to current AFDC recipients and applicants of the lump sum policy, in accordance with the Court's opinion; and

5. defendant is to notify all AFDC recipients whose benefits were terminated as a result of its lump sum policy, as defined by the class, that they have a right to apply for additional benefits, in accordance with the Court's opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**